Domenic DeFranco v. Commissioner. Carmela DeFranco v. Commissioner.
Domenic DeFranco v. Commissioner
Docket Nos. 18087, 18088.
United States Tax Court
1950 Tax Ct. Memo LEXIS 10; 9 T.C.M. (CCH) 1158; T.C.M. (RIA) 50311; December 19, 1950
*10 Petitioner Domenic DeFranco came to this country from Italy in 1905, and in 1917 married petitioner Carmela DeFranco. Petitioners have three sons and a daughter. In the conduct of his tomato business petitioner has had the assistance of his three sons and Carmela who kept the meager records of the business. In 1939, petitioners and their children drove to San Francisco and there began the operation of the tomato business as a partnership composed of Domenic and two of his sons who were active in the business. In 1940, petitioners and their family moved with the business to Los Angeles where they lived throughout the remaining taxable years. In 1945 petitioners' third son who had then reached the age of 21 years became a member of the partnership. Except for the year 1946 when petitioners filed individual returns on March 31, 1947, no individual returns were filed for the taxable years herein. No partnership returns were filed prior to March 31, 1947, and no declarations of estimated tax were ever filed for the taxable years herein. Held: 1. Respondent erred in not recognizing that petitioner Domenic DeFranco and his sons have continuously operated a bona fide partnership from *11 December 13, 1939 throughout the taxable year 1946. Held, further, partnership interests and distributive shares of net income determined. 2. Respondent did not err in determining that petitioner Domenic DeFranco is liable for penalties for fraud, delinquency, failure to file declarations of estimated tax, and for substantial underestimations of estimated tax. 3. Respondent did not sustain his burden of proof to show that petitioner Carmela DeFranco's failure to file returns was due to fraud with intent to evade tax, and respondent's determination of fraud penalties against Carmela is not sustained. Held, further, delinquency penalties, penalties for failure to file declaration of estimated tax and penalties for substantial underestimation of estimated tax determined against Carmela are sustained. She has not sustained her burden of proof to show that her failure in these respects was due to reasonable cause and not to willful neglect. 4. Net incomes of petitioners determined using increase in net worth method for 1939 through 1944, and income and expense method for 1945 and 1946. Held, further, partnership returns not entitled to be filed on a fiscal year basis. Albert J. Ryan, Esq., 115 S. Fairfax Ave., Los Angeles, Calif., for the petitioners. Robert H. Kinderman, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion In these consolidated proceedings the Commissioner has determined deficiencies in income taxes for the calendar years 1939 through 1946 and has determined that petitioners are liable for certain penalties. The deficiencies and penalties for each petitioner are as follows: Domenic DeFranco - Docket No. 18087
Failure to File
Delinquency
Fraud
Declaration of
Year
Deficiency
Penalty
Penalty
Estimated Tax
1939
$ 584.21
$ 146.05
$ 292.11
1940
127.14
31.79
63.57
1941
2,187.41
546.85
1,093.71
1942
16,407.13
4,101.78
8,203.57
1943
12,960.66
3,240.17
6,480.33
$ 2,073.70
1944
19,902.61
4,975.65
9,951.31
3,184.41
1945
38,046.40
9,511.60
19,023.20
6,087.42
1946
111,005.43
5,578.62
55,502.72
17,760.87
Totals
$201,220.99
$28,132.51
$100,610.52
$29,106.40
Carmela DeFranco - Docket No. 18088
1939
$ 584.27
$ 146.07
$ 292.14
1940
127.14
31.79
63.57
1941
2,187.41
546.85
1,093.70
1942
16,631.13
4,157.78
8,315.57
1943
13,233.12
3,308.28
6,616.56
$ 2,117.29
1944
20,262.62
5,065.65
10,131.31
3,242.01
1945
38,451.40
9,612.85
19,225.70
6,152.22
1946
111,005.43
5,578.62
55,502.72
17,760.87
Totals
$202,482.52
$28,447.89
$101,241.27
$29,272.39
*13 The deficiencies result from respondent's determination that petitioners' net incomes for each year are represented by the gross amount of bank deposits. To these deficiencies respondent has added certain amounts by reason of his determination that petitioners are liable for various penalties. By appropriate assignments of error petitioners contest respondent's determinations, which present the following issues for our decision: 1. Whether respondent erred in not determining that petitioner Domenic DeFranco and his several sons were partners from some time in 1939 through the taxable year 1946, and if respondent did err, what was this partnership's composition and what per cent of its earnings represented Domenic DeFranco's distributable share. 2. Whether respondent erred in determining the various penalties set out in the deficiency notices. 3. Whether respondent erred in determining the net incomes of petitioners, and if so, then what is the correct net income of petitioners. Findings of Fact Petitioner Domenic DeFranco, hereafter called Domenic, was born in Italy in 1892 and came to the United States and to Boston, Massachusetts in 1905. He will sometimes hereafter be *14 referred to as petitioner. He was educated through the fourth grade in Italy and in this country attended night school for two or three years. Domenic's first occupation was as a fruit vendor in Boston where he lived for two or three years after his arrival and after taking other jobs in this country and Canada he returned to Boston in 1914 with approximately $400. In 1917 Domenic married petitioner Carmela DeFranco, hereafter called Carmela. After their marriage Carmela helped Domenic in his business as much as possible and at all times prior to 1947 Carmela kept the books and records of the business, such as they were. These books and records were very fragmentary and incomplete. Petitioners have three sons: Victor, born, December 6, 1918; John, born August 2, 1921; Salvatore, born, May 29, 1924; and a daughter, Teresa, born in 1930 or 1931. Carmela and petitioners' sons were the only assistance Domenic had in operating the business during the early years and throughout most of the taxable years. By 1926 the petitioners had accumulated $6,000 and by 1934 Domenic was engaged solely in the tomato business which at this time he was operating from a store in Boston, under the name *15 of the New England Tomato Company. On July 28, 1938 Domenic purchased a new 1938 LaSalle 4-door touring sedan for $1,654. On December 31, 1938 petitioners had no less than $12,000 in addition to their savings accounts, securities, and automobile. In 1939 Domenic drove his family to San Francisco, California where he operated a tomato business using a building leased to one or both of his sons, Victor and/or John. During the year 1940 Domenic and his family moved to Los Angeles where petitioners now reside. In moving the family the business enterprise was also moved to Los Angeles. In 1939 Domenic and his two sons entered into an oral agreement forming a partnership in which Domenic was entitled to a 50 per cent share of the profits and Victor and John were each entitled to 25 per cent of the profits. This agreement continued until 1945 when a new oral agreement was made whereby the partnership was composed of Domenic and his three sons, Victor, John and Salvatore. Salvatore at that time was 21 years of age and the other two sons were beyond that age. The new partnership agreement gave Domenic a 40 per cent share of the profits and his three sons were each to receive a 20 per cent *16 share of the profits. This second partnership agreement remained unchanged through the close of the calendar year 1946. The New England Tomato Company was licensed by the United States Department of Agriculture under the Perishable Agricultural Commodities Act of 1930, on December 13, 1939 as a partnership consisting of Domenic, Victor and John DeFranco to handle fresh fruits and fresh vegetables in interstate and foreign commerce as a commission merchant and/or dealer and/or broker. The New England Tomato Company was licensed by the United States Department of Agriculture for the same purpose on July 2, 1945 as a partnership consisting of Domenic, Victor, John, and Salvatore DeFranco. A similar license was issued on the 18th of June, 1946 to these same four partners. In the conduct of the business all partners were capable of handling the complete affairs of the business which was operated sometimes as the New England Tomato Company and at other times, especially when dealing in grapes, as D. DeFranco and Sons. At various times during the taxable years herein all of the partners had authority to sign checks on behalf of the partnership and they did so exercise this authority. *17 All of the partners had the power to incur obligations on behalf of the partnership and they so did. When Domenic, the senior partner, was out of the city full authority for the operation of the business was vested in his sons and partners. During the grape season when purchases were made in Lodi, California, it was common practice for one or more of Domenic's sons to handle the entire transaction there. On one occasion in 1945 Salvatore went to Boston on behalf of the partnership to handle the sale of grapes shipped from California. This was also done by Victor in 1946. Each of the sons was at some time during the War in the military service; however, even during these periods of military service they maintained some contact with the partnership. Victor was in service during the time Salvatore handled the grape sales in Boston in 1945; however, Victor while on leave from the service, was in Boston to assist Salvatore. Victor, while in service, also contacted persons egarding the purchase of a tomato packaging machine for the partnership which was ultimately purchased on a contract signed by Salvatore. Salvatore, while in service, was able to spend weekends working for the partnership. *18 About 10 months prior to his military service John worked nights for North American Aircraft Company but he worked for the partnership during the day. Domenic, Victor, and John joined together on December 13, 1939 for the purpose of conducting a bona fide partnership form of business and they did so conduct this partnership business until July 2, 1945 when Salvatore became a bona fide partner and from that time through the taxable year 1946 Domenic, Victor, John and Salvatore have been partners. By agreement between the parties the individual shares of the profits in the first partnership were: Domenic 50 per cent, Victor 25 per cent and John 25 per cent. By agreement of the parties, the individual shares in the profits of the second partnership were: Domenic 40 per cent, Victor 20 per cent, John 20 per cent, and Salvatore 20 per cent. Carmela DeFranco at no time was a partner in the partnership. Prior to the formation of the partnership and during all the years of partnership operation through the calendar year 1946 Carmela kept the meager records of the business which were claimed to have been destroyed although later some of them were found. These records were inadequate and *19 incomplete and petitioners' accountant was therefore forced to determine net income on the basis of an increase in net worth. Petitioners' accountants who attempted to reconstruct net income through 1944 on a net worth basis and for 1945 and 1946 on an income and expense basis were not supplied with all of the information available to petitioner. Substantial commercial bank accounts for the years 1945 and 1946 were never seen by petitioners' two accountants until about the time of the trial of these proceedings. Petitioner conceded that he knew whether the business was making a profit or suffering a loss. However, prior to the time petitioner's accountant filed a partnership return for the period, November 21, 1945 to June 30, 1946 no partnership return was filed. No individual income tax returns were filed for any taxable year prior to 1946 and even these returns were filed after March 15, 1946. Petitioners' accountant who prepared the individual returns for 1946 was unable to gather all the necessary information within the prescribed time required for filing the returns. The individual returns for the year 1946 were received by the collector of internal revenue on March 31, 1947. Petitioners' *20 accountant had requested an extension of time for filing the 1946 individual returns. However, he was without proper authority for requesting such extension. It is not shown that the failure to file returns for any of the taxable years herein was due to reasonable cause and not due to willful neglect. The individual returns for 1946 and the partnership return for the period November 21, 1945 to June 30, 1946, all contain statements by petitioners' accountant that the returns were prepared "from information supplied by the taxpayer based partly on accounting documents and partly on estimates." Petitioner Domenic DeFranco claims to have first heard about the necessity for his filing an income tax return when Victor was discharged from the Army in February or March of 1946. No effort was made to file a return, however, until March 1947. Petitioners never filed declarations of their estimated tax for the years 1943 through 1946. Domenic has earned a living buying and selling tomatoes and other merchandise from the time of his arrival in this country in 1905. He has been able to read the daily paper for many years - at least from 1917 on. He listened to the radio and had a radio in *21 his automobile purchased in 1938. Domenic was aware of the large sum it was costing to finance the War. He claims that he never made any inquiries of any person as to whether he was obligated to file an income tax return. Petitioner Domenic knew whether he made money in certain years and although it is probable that he did not know exactly how much the net income of the business was, he did know the business was making money. When petitioners finally made attempts to file income tax returns for 1946 all the necessary information that the accountants would need for a proper construction of net income was not put in the hands of their accountants. Substantial deposits in commercial accounts ranging upwards of $58,000 for the year 1945, and $11,000 for the year 1946, were not presented to these accountants. There is clear and convincing evidence that enables us to find that some portion at least of the deficiencies in petitioner Domenic DeFranco's income tax liability for each and every year 1939 through 1946 is due to fraud with intent to evade tax. We are unable to find on the evidence which has been presented that any portion of the deficiency in petitioner Carmela DeFranco's income *22 tax liability for any taxable year 1939 through 1946 is due to fraud with intent to evade the tax. In determining the amount of the deficiencies herein, we are faced with the problem of finding the net income of petitioners for each of the years 1939 through 1946. As pointed out above, there are no records of the business from 1939 through 1944 that enable us to find the net income using a profit and loss statement. Respondent in his deficiency notice determined petitioners' tax liability from the net income which respondent determined on the basis of gross bank deposits without any deductions. Since practically all of petitioner's income was derived from the operations of the New England Tomato Company and D. DeFranco and Sons, businesses where the cost of goods sold is a very important factor, it is obvious that gross bank deposits do not reflect net income. During the hearing of these proceedings, petitioners introduced substantial information which enables us to reconstruct net income for 1939 through 1944, using the increase in net worth method and for 1945 and 1946, using an income and expense method. Respondent in brief has apparently conceded that his original determination *23 based on gross bank deposits are inaccurate and has requested findings of net income using as a basis the evidence adduced at the hearing. Because the New England Tomato Company and D. DeFranco and Sons were partnerships and because all of the deposits in bank accounts and securities held after December 13, 1939, represent income from the partnership, we use these accounts to show partnership income and from these figures the net income of petitioners will be derived. For the year 1939, the partnership of which Domenic was a member which was formed in December of 1939, is entitled to five per cent of the net income for 1939, and of that five per cent Domenic's share is 50 per cent. The remaining 95 per cent of the 1939 income is all attributable to Domenic because it was earned prior to the creation of the partnership. Because of the community property laws of California one-half of Domenic's income for 1946 was reported as Carmela's income and the income for years prior to 1946 is so treated in the deficiency notice. Carmela was at no time a partner but because Domenic's share of the partnership income was community property she is entitled to one-half thereof. For the years 1940 *24 through 1944, all of the net income was partnership income of which 50 per cent represents Domenic's share. For the year 1945, the net income of the partnership distributable to Domenic is 45 per cent because for one-half of 1945 he was entitled to 50 per cent of the profits and for the remaining one-half of 1945 Domenic was entitled to 40 per cent of the profits. For the year 1946, 40 per cent of the net income is distributable to Domenic. The net worth statements for each year herein are in substantial agreement with the testimony of petitioners' accountant who prepared net worth statements and petitioners' exhibit containing these net worth statements. Certain adjustments to these net worth statements are necessary in view of other evidence submitted by both respondent and petitioners. Petitioners' accountant in computing net income based on an increase in net worth did not consider any living expenses nor attempt to estimate the tomato inventory at the close of the year. In 1946, $5,098.30 was withdrawn from the Security First National Bank of Los Angeles for living expenses. On the basis of this and other evidence, we have found an estimated amount for living expenses for each *25 year 1939 through 1944. The estimated amount for living expenses and the estimated tomato inventory for each year 1939 through 1944, will be found in the net income figures of the partnership based on an increase in net worth. The following schedules show the business and partnership net incomes which we find after a careful consideration of the evidence for the years 1939 through 1946: 1939
Net Worth December 31, 1939
Cash in Banks: Bank of America, San Francisco (Commercial Acct.)
$ 3,070.01
Bank of America, San Francisco No. 19448
5.00
Bank of America, San Francisco No. 20701
4,030.32
Securities
7,807.50
Automobile
1,654.00
Tomato Inventory
1,000.00
Net Worth December 31, 1939
$17,566.83
Less: Net Worth December 31, 1938
Cash in Bank: Suffolk Savings Bank, Boston No. 511263
$ 3,297.07
Cash on hand (not evidenced by bank records)
12,000.00
Securities
750.00
Net Worth December 31, 1938
16,047.07
Increase in Net Worth
$ 1,519.76
Add: Living and Personal Expenses 1939
3,000.00
Net Income 1939
$ 4,519.76
1940
Net Worth December 31, 1940
Cash in Banks: Security First National Bank, Los Angeles (Commercial)
$ 420.28
Security First National Bank, Los Angeles No. 189557
1,300.00
Bank of America No. 20698
39.56
Bank of America No. 19448
5.00
Securities
8,865.50
Automobile
1,654.00
Tomato Inventory
1,000.00
Net Worth December 31, 1940
$13,284.34
Less: Net Worth December 31, 1939
17,566.83
Decrease in Net Worth 1940
4,282.49
Add: Living and Personal Expenses 1940
3,000.00
Deflcit 1940
$ 1,282.49
1941
Net Worth December 31, 1941
Cash in Banks: Security First National (Commercial)
$ 2,266.50
Security First National No. 189557
1,500.00
Security First National No. 190075
1,300.00
First National Bank of Boston No. 20635
1,000.00
Citizens National Trust & Savings, Los Angeles No. 5853
5.00
Citizens National Trust & Savings, Los Angeles No. 6320
12.83
Securities
6,250.50
Automobile
1,654.00
Tomato Inventory
1,000.00
Net Worth December 31, 1941
$14,988.83
Less: Net Worth December 31, 1940
13,284.34
Increase in Net Worth 1941
1,704.49
Add: Living and Personal Expenses 1941
3,000.00
Net Income 1941
$ 4,704.49
1942
Net Worth December 31, 1942
Cash in Banks: Security First National (Commercial)
$ 6,490.53
Security First National No. 190633
500.00
Security First National No. 189557
1,511.25
Security First National No. 190075
1,309.75
First National Bank of Boston No. 20635
4,000.33
Farmers & Merch'ts Nat'l Bank of Los Angeles No. 16584
665.00
California Bank No. 8428
320.00
Citizens National Trust & Savings No. 5853
5.00
Citizens National Trust & Savings No. 6320
12.83
Securities
4,369.50
Automobile
1,654.00
Tomato Inventory
1,000.00
Net Worth December 31, 1942
$21,838.19
Less: Net Worth December 31, 1941
14,988.83
Increase in Net Worth 1942
6,849.36
Add: Living and Personal Expenses 1942
3,000.00
Net Income 1942
$ 9,849.36
1943
Net Worth December 31, 1943
Cash in Banks: Security First National (Commercial)
$ 6,232.61
Security First National No. 190633
505.01
Security First National No. 189557
3,007.55
Security First National No. 190075
3,006.54
First National Bank of Boston No. 22314
4,000.00
Home Savings Bank, Boston No. D443968
3,391.57
Citizens National Trust & Savings No. 5853
5.00
Citizens National Trust & Savings No. 6320
12.83
California Bank No. 8428
502.20
Farmers & Merchants National Bank No. 16584
673.33
Farmers & Merchants National Bank No. 13093
4,000.00
Securities
4,676.00
Automobile
1,654.00
Tomato Inventory
2,000.00
Net Worth December 31, 1943
$33,666.64
Less: Net Worth December 31, 1942
21,838.19
Increase in Net Worth 1943
11,828.45
Add: Living and Personal Expenses 1943
3,500.00
Net Income 1943
$15,328.45
1944
Net Worth December 31, 1944
Cash in Banks: Security First National (Commercial)
$ 6,460.46
Security First National No. 189557
5,000.00
Security First National No. 190633
1,010.06
Security First National No. 192154
5,000.00
First National Bank of Boston No. 22314
5,021.66
Home Savings Bank, Boston No. D443968
5,038.39
California Bank No. 8428
1,207.10
California Bank No. 9529
5,000.00
California Bank No. 107372
5,000.00
Farmers & Merchants National Bank No. 9838
5,000.00
Farmers & Merchants National Bank No. 16584
1,007.40
Farmers & Merchants National Bank No. 15769
5,025.00
Farmers and Merchants Bank of Lodi (Commercial)
109.14
Bank of America, Los Angeles No. 100318
5,000.00
Bank of America, Los Angeles No. 4688
150.25
Securities
4,676.00
Automobile
1,654.00
Tomato Inventory
2,500.00
Net Worth December 31, 1944
$63,859.46
Less: Net Worth December 31, 1943
33,666.64
Increase in Net Worth 1944
30,192.82
Add: Living and Personal Expenses 1944
3,500.00
Net Income 1944
$33,692.82
1945
Income
Sales of Cherries
$24,018.76
Sales of Grapes and Tomatoes
40,471.44
Dividends Received
260.00
Interest Received
278.95
Unverified Deposits
8,365.00
$73,394.15
Expenses
Grape Expense
$54,534.82
Cherry Expense
8,379.93
Tomato Expense
2,809.02
Automobile Expense
634.98
Miscellaneous Expense
735.23
67,093.98
Difference
6,300.17
Additional deposits grape sales 1945 not reported
$58,512.80
Less: Transfers to California Banks
39,436.81
19,075.99
Net Income 1945
$25,376.16
1946
Income reported on partnership return for period November
21, 1945 to June 30, 1946
$21,581.23
Less: 41/222 X 21581.23 (portion not in calendar 1946)
3,985.72
$17,595.51
Income reported for partnership July 1, 1946 to June 30, 1947
$29,245.63
Less: 1/2 X 29245.63 (portion not in calendar 1946)
14,622.82
14,622.81
Additional profit on cherry sales
871.33
Additional deposits grape sales 1946, not reported
$11,916.79
Less: Transfer to California Bank Account
2,500.00
9,416.79
Net Income 1946
$42,506.44
*26 Opinion BLACK, Judge: These proceedings involve three main issues: (1) Whether respondent erred in determining that petitioner Domenic DeFranco was not a partner with his several adult sons during the respective periods mentioned in our findings of fact, (2) whether respondent erred in determining that petitioners were liable for certain penalties, and (3) whether respondent erred in his determination of petitioners' net incomes. These issues will be considered in sequence. Partnership Issue. - Petitioners allege that respondent erred in not recognizing that Domenic was a partner with his several adult sons during the respective periods in question and the net income of the business operated sometimes as the New England Tomato Company and sometimes as D. DeFranco and Sons is not taxable in its entirety to petitioners. Whether there was a partnership in existence during the taxable years is a question of fact to be determined from the evidence, and whether the parties had a bona fide intent of joining together for the purposes of carrying on a business and to share in the profits and losses. In Commissioner v. Culbertson, 337 U.S. 733, the Court said: "The question *27 is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts - the agreements, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" In 1939, Domenic and his two oldest sons, Victor and John, entered into an oral agreement to conduct a partnership and on December 13, 1949, the partnership was licensed by the United States Department of Agriculture under the Perishable Agricultural Commodities Act of 1930 to handle fresh fruits and fresh vegetables in interstate or foreign commerce as a commission merchant and/or dealer and/or broker. In the conduct of the business known sometimes as the New England Tomato Company and sometimes as D. *28 DeFranco and Sons, petitioner Domenic and his sons, Victor and John, all performed what is sometimes called vital services. While Domenic was apparently the dominant partner, Victor and John were considerably more than mere employees of Domenic. Victor and John assumed the management of the business at times and they represented themselves as partners, and on behalf of the partnership when purchases of grapes were made at Lodi, California, one of the sons would often do the purchasing and personally supervise the removal of the grapes. Both Victor and John had authority to sign checks on behalf of the partnership, and they did so. While Victor was in service he continued to look after his partnership interest and partnership affairs even to the extent of actual participation in the sale of grapes. In 1945, Domenic's youngest son, Salvatore, who was then 21 years of age, was admitted into the partnership by oral agreement. On July 2, 1945, a license was issued by the United States Department of Agriculture to the New England Tomato Company, a partnership composed of Domenic, Victor, John, and Salvatore. Victor and John continued to perform services for the partnership and Salvatore *29 who had previously worked for the partnership assumed full responsibility as a partner, rendering important and vital services to the partnership. Petitioner Domenic came to this country in 1905, and for many years operated as fruit peddler. Oomenic and petitioner Carmela were married in 1917, and thereafter Carmela assisted Domenic in the conduct of his business as much as possible; however, Carmela has always been a housewife and has reared four children, the three sons and a daughter. Petitioners' sons from a very early age helped Domenic in the conduct of his business. Victor and John never completed a day high school course because it was necessary for them to help with the business. In 1939 when Domenic, Victor, and John joined together for the purpose of conducting a partnership, they joined together with a bona fide intent of carrying on the business as a partnership, and they did carry it on in that manner. The same may be said of their intent and method of carrying on the business when Salvatore was made a partner. While the profits of the partnership were never distributed in cash to any of the partners, it was agreed by all of the partners that all of the funds represented *30 by earnings of the partnership were partnership property to which each partner was entitled to his distributive share. Adequate amounts for living and personal expenses were withdrawn from the partnership profits and the remainder of the profits was deposited for the future use of the business, and was used in the business during the taxable years. The net income of the partnership for each year is set out in our findings of fact. The percentage of the income to which each partner was entitled under the partnership agreement is also set out in our findings of fact. Penalties. - Respondent has determined that petitioners were guilty of fraud with intent to evade income tax for the years 1939 through 1946 (and victory tax for the year 1943). Because of this determination respondent has added to petitioners' tax the 50 per cent fraud penalty for the years 1939 through 1946 in accordance with the provisions of the Internal Revenue Code. Respondent has also added the delinquency penalty of 25 per cent in accordance with section 3612(d) of the Internal Revenue Code for the years 1939 through 1945, and in accordance with section 291(a) of the Internal Revenue Code *31 has added a delinquency penalty of five per cent for the year 1946. In addition to these penalties, respondent has determined that petitioners for the years 1943 through 1946 are subject to an addition of 10 per cent to the tax under section 294 for failure to file a declaration of estimated tax, and an addition of six per cent under section 294 for substantial underestimate of estimated tax. We have, therefore, four issues relating to penalties: (1) fraud, (2) delinquency, (3) failure to file a declaration of estimated tax, and (4) a substantial underestimate of estimated tax. Each of these penalties will be considered separately. Fraud. - The determination of fraud by respondent places upon him the burden of proving fraud by clear and convincing evidence. Fraud is not negligence, however gross, but it is the intentional wrongdoing for the purpose of evading a tax believed to be owing. Mitchell v. Commissioner, 118 Fed. (2d) 308. In William W. Kellett, 5 T.C. 608, we said: "What constitutes fraud is a question of fact which frequently requires a nicely balanced judgment to answer. To be considered are all of the facts and circumstances surrounding *32 the conduct of the taxpayer's business and all the facts incident to the preparation of the alleged fraudulent return. The conclusion must be reached not on isolated bits of testimony, but on the whole record. * * *" We have applied the foregoing test and we think that respondent has met his burden of proof insofar as petitioner Domenic is concerned for each year involved here. Petitioner Domenic claimed that he was unaware of the income tax laws prior to 1945 or 1946, yet even after his claimed ignorance was transformed into a state of enlightenment he did nothing about filing returns until about March 1947. When petitioner finally placed his tax matters in the hands of two accountants, these accountants were not given all of the information available to petitioner. Petitioner Domenic is apparently a business man of considerable ability and experience and in the conduct of his partnership he heard people say that "If you make so much money, you have to file income tax." Domenic listened to the radio and read the newspapers, yet he claims that he knew nothing about the income tax laws until 1945 or 1946. We find ourselves unable to believe the truth of this explanation. Cf. Abraham Wolf, 14 T.C. 751, *33 on the issue of fraud. In that case in sustaining the Commissioner on the imposition of fraud penalties, we said: "Where over a course of years an intelligent taxpayer and business man has received income in substantial amounts, as shown by this record, and has failed to report that income, and where no books or records were kept by him and no tenable explanation was offered for the failure to report the income received, the burden of the respondent, in our judgment, is fully met. * * *" [Italics supplied.] It is probably true that because of the inaccurate and inadequate records of the business kept by Carmela that the exact amount of the partnership net income could not be determined by Domenic, however, he know that his net worth was increasing from year to year as a result of the partnership efforts. While it is seldom possible to establish fraud by direct proof of intention ( M. Rea Gano, 19 B.T.A. 518), the clear and convincing evidence which we have in the present record requires us to hold that some part of the deficiency of petitioner Domenic for each of the years involved herein was due to fraud with intent to evade tax. Petitioner's actions with regard *34 to his income tax returns indicate a reckless abandon for the purpose of defeating the income tax laws. His claim of ignorance does not stand up in the light of all the evidence showing business acumen which has achieved for himself large amounts of net income of which, to some considerable extent, at least, he must have been aware. Even if we believed Domenic's professed ignorance of income tax laws prior to 1945 or 1946, he testified that in 1945 or 1946 he was apprised of the necessity for filing returns and yet nothing was done until March 1947, which time approximates the preliminary investigation of petitioner's tax liabilities. Cf. Aaron Hirschman, 12 T.C. 1223. Moreover, Domenic failed to disclose substantial amounts of income which were derived from grape sales in Boston, Massachusetts, in 1945 and 1946. It was only after respondent knew of these deposits in Boston bank accounts that Domenic "found" these bank statements and presented them to his accountant at the time of the hearing, or shortly before. Domenic's dealing with respondent's agents during the course of the investigation of his tax liability showed that cooperation was had only after considerable *35 resistance. Complete cooperation between petitioners and respondent's agents was never had. On the entire record, we hold that part of the deficiencies for petitioner Domenic for each year 1939 through 1946, is due to fraud with intent to evade tax and, therefore, an additional 50 per cent assessment will be added to the deficiency under section 293(b) of the Internal Revenue Code. This 50 per cent fraud penalty will, of course, be redetermined under Rule 50 as will also the deficiencies be redetermined. Now, as to the determination of fraud penalties against petitioner Carmela DeFranco, we hold that the Commissioner has not sustained his burden of proof. Carmela was at no time a partner in the business and she never claimed to be a partner. She was a housewife who did, in her spare time, devote some time to the business and kept some records of a sort, apparently a very poor sort; she knew nothing about bookkeeping. She was paid no salary and the only reason she is entitled to a share in Domenic's income is because of the community property laws of the State of California. We are not convinced that her failure to file income tax returns was due to fraud *36 with intent to evade tax. The Commissioner's determination of the 50 per cent fraud penalties against her is not sustained. Delinquency. - Petitioners failed to file income tax returns for the years 1939 through 1945 (and victory tax returns for the year 1943) and filed late returns for 1946. If no return is filed, in accordance with sections 3612(d) and 291(a) of the Internal Revenue Code an additional maximum penalty of 25 per cent of the amount of the tax shall be added to the tax unless it is shown that failure to file a return was due to reasonable cause and not due to willful neglect. Petitioners have failed to show the necessary facts relieving them of these additions to their tax. For the years 1939 through 1945, a 25 per cent addition to petitioners' tax is necessary. For the year 1946, since returns were filed within 30 days of the required time, only a five per cent addition to petitioners' tax is necessary. Failure to File Declaration of Estimated Tax. - Petitioners failed to file declarations of estimated tax for 1943 through 1946, and respondent, acting in accordance with section 294 of the Internal Revenue Code, added *37 to petitioners' tax liability an additional 10 per cent. The addition under section 294 was properly imposed as it is not shown that such failure was due to reasonable cause and not due to willful neglect. Substantial Underestimation of Estimated Tax. - Respondent has added to petitioners' tax liabilities for the years 1943 through 1946, six per cent under section 294 due to a substantial underestimate of estimated tax. The addition of this six per cent is sustained as it is not shown that the underestimation was due to reasonable cause and not willful neglect and in the event a declaration of estimated tax is not filed the estimated tax is treated as zero. Regulations 111, section 29.294-1. Net Incomes of Petitioners. - In determining the net income of the business operated by Domenic during most of 1939, and later by Domenic and his two sons, we have out of necessity determined the net income for 1939 through 1944, by determining the increase in net worth with necessary adjustments for items such as living expenses. Harris v. Commissioner, 174 Fed. (2d) 70. Respondent's original determination of net income constituted a determination based on gross bank deposits. *38 This was clearly erroneous as no allowance was made for cost of goods sold or any expenses; however, it may be said that the original determination fell so far short of the proper determination because respondent was without assistance from petitioners. Respondent has recognized the error in his original determination and in his requested findings of fact for net income for 1939 through 1944 has used substantially the figures presented by petitioners in determining the increase in net worth. For the years 1945 and 1946, we have determined net income using income and expenses. Salvatore became a partner in 1945, as detailed in our findings of fact. Petitioners claim that the partnership is entitled to report income on a fiscal year basis; however, the records of the business were so fragmentary that even the partnership return for 1946 contained a statement that the figures therein were based partially on estimates. Under section 41 of the Internal Revenue Code the partnership is not entitled to file a return on a fiscal year basis as it did not keep "books" within the meaning of that section. Louis M. Brooks, 6 T.C. 504; Max H. Stryker, 36 B.T.A. 326. *39 For 1945 and 1946, we have added to the partnership net income certain bank deposits (after deducting transfers between accounts) which represent income not reported by petitioners to their accountants who computed net income for 1945 and 1946. Halle v. Commissioner, 175 Fed. (2d) 500, affirming 7 T.C. 245, certiorari denied 338 U.S. 949. In our findings of fact we have set out the net income of the partnership and we have found what portion of it is distributable to Domenic. Petitioners filed delinquent income tax returns for the year 1946 and under the community property laws of California Carmela reported one-half of Domenic's income and respondent, in determining the deficiencies, has also given Carmela one-half of Domenic's income. The deficiencies must be determined in a recomputation under Rule 50 in accordance with our findings of fact. The penalties will also be recomputed under Rule 50. Decisions will be entered under Rule 50.