WILLIAM W. KELLETT AND VIRGINIA KELLETT, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3264. Promulgated August 20, 1945.

*Charles S. Jacobs, Esq.*, *William R. Spofford, Esq.*, and *Chester J. McGuire, Esq.*, for the petitioners.

*Paul E. Waring, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The first issue which we have to decide in this proceeding is whether the statute of limitations has barred the deficiencies and penalties which the Commissioner has determined.

In his answer respondent denied that the statute of limitations had run, but at the hearing and in his brief he concedes that the statute of limitations has run unless petitioner's tax returns for each of the taxable years were false or fraudulent with intent to evade tax. Respondent recognizes that the statute places upon him the burden of proof to establish fraud and at the hearing he assumed this burden to go forward with his evidence, after conceding that the statute of limitations

had run unless he was successful in establishing fraud. The applicable statutes are in the margin.[1]

What constitutes fraud is a question of fact which frequently requires a nicely balanced judgment to answer. To be considered are all of the facts and circumstances surrounding the conduct of the taxpayer's business and all the facts incident to the preparation of the alleged fraudulent return. The conclusion must be reached not on isolated bits of testimony, but on the whole record. See discussion of "What Constitutes Fraud," Merten's Law of Federal Income Taxation, sec. 55.11, vol. 10. The same author says in section 55.19, vol. 10, that:

> The Code contains a provision that in any proceeding involving the issue "whether the petitioner has been guilty of fraud with intent to evade tax" the burden of proof in respect of such issue shall be upon the Commissioner. This burden is a difficult one to sustain. * * * The Commissioner does not have to establish his determination of fraud beyond a reasonable doubt, but fraud must be established by more than a mere preponderance of the evidence; the evidence must be clear and convincing. * * *

We think the foregoing statements are well supported by the authorities, and we shall endeavor to apply them in the instant case. Applying these rules, we will now consider separately the two respective taxable years which we have before us. Each year has its own respective facts.

### 1930.

It seems clear to us that the Commissioner has failed to meet his burden of proof as to this year. Respondent has introduced a great deal of evidence, oral and documentary, in his effort to show that petitioner's return for the year 1930 was false and fraudulent, with intent to evade the tax. The upshot of this evidence is that in 1927 petitioner W. W. Kellett received from Charles Townsend Ludington certain preferred and common shares of B. B. T. Corporation which he did not report in his income tax return for that year; also that he received 25 shares common stock of B. B. T. Corporation in 1928 under similar circumstances, which he did not report as income in his 1928 return; that petitioner's preferred shares were liquidated in 1930 and his common shares were sold or exchanged in that year to

---

[1] Revenue Act of 1928—

SEC. 276. SAME—EXCEPTIONS.

(a) *False return or no return.*—In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such a tax may be begun without assessment, at any time.

\* \* \* \* \* \* \*

SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY.

\* \* \* \* \* \* \*

(b) *Fraud.*—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.

American Gas Accumulator Co.; and that no gain was reported by petitioner from either transaction. It is not disputed by petitioner that his preferred shares in B. B. T. Corporation were completely liquidated in 1930 and that he received in such liquidation the amounts which respondent has determined, but he contends these amounts did not exceed his basis. Petitioner contends that his basis of cost for the 200 shares of preferred stock which he owned in B. B. T. was greater than the price which he received, and hence he had no gain from the liquidation of said stock which he should have reported. Petitioner contends, and the respondent concedes, that petitioner had a cost basis for 21 of his preferred shares of $2,100. The balance of his preferred shares, 179, petitioner contends he received as a gift in 1927 from Charles Townsend Ludington, and that these shares had a cost basis of $100 per share to Ludington, and that under the applicable statute petitioner is entitled to use his donor's basis of cost. Petitioner also contends that even if he is wrong in his belief that the 179 shares of preferred stock which he received in 1927 from Ludington were a gift and that the value of these shares was taxable to him as compensation in 1927, that, nevertheless, respondent can not make out of these facts fraud in failing to report any gain from the liquidation of the shares in 1930. On this point petitioner says in his brief, as follows:

* * * If it was received as a gift, the basis to petitioner would be the basis in the hands of the donor and if it were received as compensation, its basis would be the value at date of receipt, as is evidenced by the affirmation of the decision of this Court in *McKee vs. Commissioner*, by the Circuit Court of Appeals for the Sixth Circuit, 116 F. (2d) 949 (1941) and the case of *Hawke v. Commissioner*, 109 F. (2d) 946 (1940). If only the question of tax liability were involved, the respondent might be in a position to plead estoppel. Certainly he is not in a position to plead estoppel where fraud is involved. And fraud is never presumed; *Griffiths v. Commissioner*, 50 F. (2d) 782.

In discussing whether the Commissioner has established fraud for 1930, it should be remembered that we are not called upon to decide whether petitioner was guilty of fraud in 1927 because of his failure to report in his income tax return for that year the fair market value of such stock. We do not have that year before us. But while we do not have 1927 before us, we think petitioner has given an excuse of some plausibility for not reporting it as income in that year—certainly seemingly enough to exculpate him from the charge of fraud. The shares of stock were not paid to him by the corporation by whom he was employed, but were paid to him by Charles Townsend Ludington, as an individual. Ludington was the president of the corporation, but was ill throughout the year 1927 and was unable to perform his duties as president of the corporation. Petitioner stepped into the breach and performed them for him. In consideration of this

fact, Ludington transferred the shares in question to him. Charles T. Ludington testified at the hearing as a witness for the Commissioner and attested to the truth of the foregoing facts.

We think from the evidence given by Ludington there is some plausibility in petitioner contending that the shares of stock were received in 1927 as a gift from Ludington and not as taxable compensation, but we do not have to decide that question, for the year 1927 is not before us. Even if we assume that the shares of stock were not received as a gift by petitioner in 1927, but were received as taxable compensation for services to Ludington, his failure to report them as such in 1927 would not deprive him, in the absence of estoppel, of the right to a cost basis of such shares of stock when they were liquidated in 1930.

Respondent has not pleaded estoppel and the facts do not seem to sustain it, even if he had pleaded it. He simply contends, in substance, that as a matter of law, because petitioner did not receive the stock as a gift from Ludington in 1927, but received it as compensation and did not report such compensation in his income tax return for 1927, then he has no basis of cost in 1930 which he can use when the stock is liquidated. This position of respondent does not appear to be correct as a matter of law. See *Countway* v. *Commissioner*, 127 Fed. (2d) 69.

At any rate, the determination of a cost basis of stock which a taxpayer has acquired in some prior year, other than by purchase for cash, is frequently one of some considerable complications under the statute, and an innocent mistake by a taxpayer in the determination of such cost basis, when the stock is sold, can not be made the occasion of a determination of fraud against the taxpayer, even though he has been negligent in the determination of such basis. "Fraud," within statute providing for unlimited period for assessment in case of false or fraudulent return and statute providing for penalty of 50 percent additional because of "fraud" in tax return with intent to evade tax, means actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing, and mere negligence, whether slight or great, is not enough. See *Mitchell* v. *Commissioner*, 118 Fed. (2d) 308.

For the foregoing reasons we hold that the Commissioner has not proved fraud against petitioner because petitioner omitted from his income tax return for the year 1930 the alleged gain resulting from the liquidation of his shares of preferred stock in B. B. T. What we have said with respect to the alleged profit of petitioner from the liquidation of his preferred stock in the B. B. T. Corporation applies with equal force to the sale or exchange in 1930 of his 73 shares of common stock in B. B. T. Corporation to the American Gas Accumu-

lator Co. Petitioner received all but one of the 73 shares of common stock which he owned in B. B. T. Corporation from Charles T. Ludington in the same manner that he received 179 shares of his preferred stock in B. B. T. Forty-seven of these shares were received from Ludington in 1927 and 25 of them were received from Ludington in 1928. Petitioner received in exchange in 1930 for his 73 shares of B. B. T. common stock from American Gas Accumulator Co. 100 shares of preferred stock of American Gas Accumulator Co. having a fair market value of $10,000, and a contract executed by American Gas Accumulator Co. to pay him approximately $23,000 in years following the taxable years.

Petitioner reported no gain from the receipt of the 100 shares of the American Gas Accumulator Co. stock because he regarded its fair market value of $10,000 as being less than the cost basis which he was entitled to use because of having received 72 shares of common stock in B. B. T. Corporation stock as a gift from C. T. Ludington. The record shows that these 72 shares did have a cost basis in the hands of Ludington much greater than $10,000 and we do not understand that the Commissioner contends otherwise. He contends that petitioner's 73 shares of common stock in B. B. T. Corporation had no cost basis to him because he did not receive it as a gift from Ludington, but received it as compensation for his services. His argument in that respect is the same as he used with reference to petitioner's 179 shares of preferred stock in B. B. T. For reasons we have already stated we reject respondent's argument in this respect.

Petitioner failed to return as income anything from the receipt of the contract with American Gas Accumulator Co. to pay him $23,000 in future years because he regarded the contract as having no fair market value. He did return as income the $4,000 which he received from this contract in 1931. No point is made of his having done so and we have no issue in this proceeding to decide as to the correctness of petitioner's return of this $4,000 in 1931.

On the whole record we think respondent has failed to show that petitioner's income tax return for the year 1930 was false or fraudulent with intent to evade tax. Therefore, the statute of limitations has barred the assessment and collection of the deficiency and penalty which the Commissioner has determined for the year 1930 against W. W. Kellett and his wife, Virginia Kellett. Therefore, there is no deficiency and penalty for 1930 due by either of them.

### 1931.

The facts connected with petitioner's income tax return for the year 1931 are considerably less complicated than the facts concerning the year 1930. The Commissioner has added to petitioner's in-

come for the year 1931, two sums of $5,000 each which petitioner received in October 1931 from the Ludington Corporation and 5,000 shares of Central Airport stock which petitioner received from Ludington Corporation May 12, 1931. Petitioner's contention as to why he failed to report in his income tax return for the year 1931 the receipt of these amounts as income is that he regarded them as gifts from the Ludington Corporation. His contention in that respect is much less plausible and convincing than it was as to the shares of stock which he received from Charles T. Ludington in 1927 and 1928, the facts of which we have already discussed under the heading of the year 1930.

In 1931 petitioner was executive vice president of the Ludington Corporation and it seems rather plain to us that what he received from that corporation in 1931, including the above described items, was taxable compensation. Petitioner reported in his 1931 income tax return the receipt of $10,000 from Ludington Corporation as income, but he did not report nor make any mention on his return of the two sums of $5,000 each which he received from Ludington Corporation in October 1931, nor did he report or make mention on his return of the 5,000 shares of Central Airport stock which he received from Ludington Corporation May 12, 1931.

Nicholas S. Ludington testified at the hearing as a witness for respondent. He testified that in 1931 he was president of the Ludington Corporation. The following questions and answers occur in his testimony:

Q Do you know what compensation he [Kellett] was to receive for services rendered by him to the Ludington Corporation in 1931?

A He was paid in 1931, in May, $10,000; in May again 5,000 shares of Central Airport stock, $2 a share; in October he received $5,000 in cash; and again in October $5,000 in cash.

Q And the sums received by him were for services rendered to the corporation, is that right, sir?

A I would say they were services either rendered or to be rendered to the corporation.

Q Now, that relates not only to the cash received by him but to the 5,000 shares of Central Airport stock, is that correct?

A That is correct.

On cross-examination by petitioner's attorney, the following testimony of the witness, Nicholas S. Ludington, occurs:

Q With respect to the payments made to Mr. Kellett following your becoming inactive in the company in 1931, can you say of your own knowledge that the amounts paid to him were for compensation for services?

A I will just reiterate my other statement, that the payments made to Mr. Kellett were for services either rendered or to be rendered.

Q And you are satisfied in your own mind that that is so?

A Yes, sir.

Q How do you know that?
A Because I was president of the corporation and that was the understanding that I made with Mr. Kellett.
Q That you made with Mr. Kellett?
A Before I left, that is correct.
Q Do you remember any of the details of that?
A Not very clearly. I remember that I had to leave and we wanted Mr. Kellett to be the executive vice-president of the corporation, and that was the arrangement which was made with him.

Although Nicholas S. Ludington was called as a witness by respondent, there was not the slightest indication that he was unfriendly to petitioner. It seems safe to assume, we think, that Nicholas S. Ludington and petitioner are on friendly terms. Therefore, on the strength of Ludington's testimony and other evidence in the record, we conclude that petitioner knew that the two payments of $5,000 each paid to him in October 1931 and the 5,000 shares of Central Airport stock which were transferred to him May 12, 1931, were paid to him as compensation for his services as executive vice president of the Ludington Corporation. We see little support in the record for petitioner's claim that these shares and this $10,000 in cash were gifts to him by the Ludington Corporation.

We have, therefore, made a finding of fact, based on the whole record, that the income tax return which petitioner filed for the calendar year 1931 was false and fraudulent, with intent to evade tax, and a part of the deficiency for that year was due to fraud with intent to evade tax. Having made that finding, it is of course clear that the statute of limitations does not bar the assessment and the collection of the deficiency which has been determined by the Commissioner.

We now take up the question of petitioner's tax liability for the year 1931. He concedes that he received the two payments of $5,000 each in October 1931 from Ludington Corporation. His only defense against including these payments in his taxable income is that he received the payments as gifts from the Ludington Corporation. We having held against petitioner on this question in our determination of the fraud issue, it naturally follows that our holding is the same on the income tax question. We, therefore, sustain the Commissioner in his action in including these two $5,000 payments in petitioner's taxable income for the year 1931.

As to the 5,000 shares of Central Airport stock which petitioner received from Ludington Corporation May 12, 1931, he contends that if our Court should decide that the fair market value of these shares is includible in his taxable income for 1931, then their fair market value was no greater than $2 per share. Petitioner's only defense against including the fair market value of these shares in his taxable income for 1931 is that they were received by him as a gift from Lud-

ington Corporation. We having held against petitioner on that issue, it naturally follows that the fair market value, if any, of these shares at the time they were received by petitioner in 1931 should be included in petitioner's taxable income for that year. Petitioner does not contend that the shares had no fair market value at the time they were received in 1931. He contends the fair market value was not greater than $2 per share. We think the evidence supports petitioner in this contention and we have found that the fair market value of the 5,000 shares received by petitioner in 1931 was $2 per share at the time they were received. It may well be that these shares were worth $3 per share before the end of the taxable year 1931, but this appreciation in value would not be taxale to petitioner until such shares were sold or otherwise disposed of. What is to be taxed to him in 1931 is the fair market value of such shares at the time they were received in 1931, which was $2 per share.

For reasons already stated, the Commissioner's imposition of the 50 percent fraud penalty against William W. Kellett for the year 1931 is sustained. The amount, however, of this penalty will be recomputed under Rule 50.

### Tax Liability of Virginia Kellett.

Respondent, in his determination of the deficiency and fraud penalty for 1931, has included the name of Virginia Kellett along with her husband William W. Kellett. He has done this on the theory that the income tax return which William W. Kellett filed for the year 1931 was a joint return filed for himself and his wife, Virginia Kellett. He still insists in his brief that his determination in this respect is correct. However, we think the facts are against him. It is true that on the income tax return filed by W. W. Kellett for 1931 the question, "Is this a joint return of husband and wife?" is answered "Yes." This, of course, is a circumstance to be considered in determining whether or not the return filed was a joint return. But it is only a circumstance. Other facts in the record are to be considered and they seem to show clearly that it was not a joint return. These facts are: The return was made out in the name of W. W. Kellett alone, it was signed by him alone. Nowhere on the return does the name of Virginia Kellett appear. None of her income is included in the return. In fact there is nothing in the record which shows that she had any income for the taxable year. All the income upon which the Commissioner has determined the deficiency and the fraud penalty was the income of William W. Kellett. Therefore, we have found as a fact that the return filed in 1931 in the name of W. W. Kellett was not a joint return of himself and his wife, Virginia Kellett.

On these facts we reverse the Commissioner's determination of a deficiency and fraud penalty against petitioner Virginia Kellett for the year 1931. See *John Kehoe,* 34 B. T. A. 59; affd., 309 U. S. 277.

*Decision will be entered under Rule 50.*