King Tsak-Kwong v. Commissioner.
King Tsak-Kwong v. Commissioner
Docket No. 27019.
United States Tax Court
1953 Tax Ct. Memo LEXIS 94; 12 T.C.M. (CCH) 1136; T.C.M. (RIA) 53327; October 7, 1953
George H. Zeutzius, Esq., 510 South Spring Street, Los Angeles, Calif., for the petitioner. Charles H. Chase, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in income tax, and additions thereto, for the years 1940, 1941, 1942, and 1943, as follows: Sec. 293(b),
Sec. 291(a),
Year
Deficiency
I.R.C.
I.R.C.
1940
$ 87.85
$ 43.93
$21.96
1941
346.68
173.34
86.67
1942
2,015.06
1,007.53
1943
2,014.47
1,007.23
*95 The petitioner did not file returns for 1940 and 1941. Returns were filed for 1942 and 1943 with the collector for the sixth district of California. The deficiencies in tax and the penalties were determined by the respondent on December 1, 1949. The chief issues are (a) whether the Commissioner erred in attributing to petitioner the additional and allegedly unreported income on which the deficiencies are based; (b) whether the Commissioner erred in imposing the fraud penalties; and (c) whether the statute of limitations bars the determination of deficiencies with respect to the years 1942 and 1943 because the determinations were not made until December 1, 1949. Findings of Fact The stipulated facts are found as facts; the stipulation is incorporated herein by reference. The petitioner, King Tsak Kwong, known also as Nai Jim Fong, is a resident of Los Angeles, California, where he has been engaged in business since 1920. He was born in China in 1900 and is a Chinese National. He attended school in China for 10 years after which he worked for his father, an exporter, in Hong Kong for about one year; and, in 1920, he came to the United States. In 1918, in China, petitioner *96 married Wong Fong Quay, and she came to the United States in 1923. Petitioner has five children, the oldest of whom is Mon Q., who was born in China in 1920. The other children were born in the United States; Owen, in 1928, Elgin, in 1930; Mabel, in 1932; and Sylvia, in 1944. A sixth child, Norman, was born in 1927; he died in 1934. The petitioner's knowledge and understanding of the English language is limited. From 1920 until 1939, the petitioner was engaged in the business of selling Chinese herbs. After 1924, he carried on a printing business, also. He owned a printing press. He printed such materials as pamphlets, circulars, stationery, and advertisements in the Chinese language. He conducted his businesses under the name of Hong Hop Company. From 1920 until 1939, the petitioner lived with his family at 448 North Los Angeles Street, where he, also, carried on his business activities. He paid $25 a month, rent. During the taxable years, 1940-1943, the petitioner was engaged, principally, in the business of selling herbs, and Chinese groceries, which included teas, gingers, and rice. Also, he did some printing work. His business was conducted under the name of N. J. Fong, *97 trading as Hong Hop Printing Company, and as the New Life Herb Company. His principal place of business during the taxable years was located in a store at 4981 Huntington Drive, for which he paid $25 a month, rent. He also conducted some business from his residence. For his residence, which changed during the taxable years, he paid $45either or $47.50 per month, rent. The petitioner did not file an income tax return for either 1940 or 1941. He filed, timely, a separate return, on a cash basis, for 1942 and for 1943, with the collector for the sixth district of California. The return for the year 1942 was prepared by petitioner's son, Mon. Mon translated and read to the petitioner the questions on the return and wrote down the answers given to him by the petitioner. The return for 1943 was prepared and typed by a Chinese friend from information furnished by the petitioner. In each return filed for 1942 and 1943, petitioner claimed a personal exemption of $1,200 for himself and his wife, and credit for three dependent children. The only income reported by the petitioner in each return for 1942 and for 1943 was income from his business enterprises. Such income was community income under *98 the community property law of California. Petitioner's wife did not file a separate income tax return for any of the taxable years. The petitioner reported in his returns for 1942 and 1943, gross receipts and net profit from his business activities for each year as follows: Year
Gross Receipts
Net Profit
1942
$3,634.10
$1,962.02
1943
3,748.10
1,985.01
During the taxable years and prior thereto, the petitioner maintained a checking account at the Security-First National Bank of Los Angeles, and a savings account at the Plaza Branch of the Citizen's National Trust and Savings Bank of Los Angeles. Petitioner has owned a safe for many years. He owned the safe in 1939 and during the taxable years. There are two boxes in the safe which are part of the construction. During years preceding 1940 and during the taxable years, petitioner kept large sums of cash in the safe which belonged to him. By December 31, 1939, petitioner had accumulated cash of his own in an amount between $6,000 and $8,000 which he kept in his safe and such amount was on hand on January 1, 1940. Petitioner had a safe deposit box at the Main and Commercial Branch of the Security-First *99 National Bank. Petitioner kept several books of account in Chinese. Among these were accounting records of receipts from and expenses of his business enterprises. Petitioner does not now have accounting records of his business receipts and disbursements for the year 1940, which have been lost, but he has such records for the years 1941, 1942, and 1943. Petitioner did not keep a general ledger nor any other written record of his savings and capital assets. During the period from 1923, when petitioner's wife came to the United States, until the end of 1939, petitioner's wife has received money from two sources, earnings and gifts from relatives and from friends upon the birth of children and on their birthdays. She accumulated such moneys and kept them in petitioner's safe. At the end of 1939 and during the taxable years, petitioner's wife had on hand accumulated, cash funds in the amount of several thousand dollars. She gave petitioner sums of money from time to time in 1942 and 1943 out of such accumulation. She kept notations in a notebook of such transfers of funds to petitioner. On June 3, 1937, the Superior Court of California for Los Angeles County appointed Fong Quock *100 Hing guardian of the estates of petitioner's sons, Owen and Elgin, under Letters of Guardianship. Fong Quock Hing qualified as guardian and filed surety bonds in the Superior Court. Prior to issuance of the Letters of Guardianship, Owen and Elgin had a joint estate consisting of $3,250, in cash, which went to them by gift from their parents. The appointment of a guardian for petitioner's minor sons in 1937 was a legal and a bona fide proceeding, and the guardianship estate created through the proceeding was a bona fide guardianship estate. The guardianship estate was in existence during the taxable years, and thereafter. Petitioner was appointed successor guardian on March 29, 1945. Funds of the estate were invested in real estate which was rented. The rental receipts were a part of the guardianship estate. On December 18, 1949, Owen attained his majority. The Superior Court approved the account of the guardian and ordered distribution of Owen's share of the estate to him, receipt of which he acknowledged on May 24, 1950, which acknowledgement was filed in the Superior Court on July 19, 1950. On February 13, 1951, Elgin attained his majority. On March 14, 1951, the Superior Court *101 approved the final accounting of the guardian and ordered distribution of the remaining assets to Elgin. Elgin acknowledged receipt of distribution of his share of the guardianship estate on March 28, 1951, which acknowledgment was filed in the Superior Court on March 30, 1951. The assets of the guardianship estate in the years 1937-1943, included two pieces of improved property located at 945-945 1/2 East Twenty Second Street, and at 3750 Pueblo Street in Los Angeles. In 1942 and 1943, there was added to the guardianship estate a third piece of property located at 1029 North Broadway. The purchase price of each piece of property was as follows: 945-945 1/2 E. Twenty Second St.
$3,250.00
3750 Pueblo St.
4,300.00
1029 North Broadway
3,500.00 At the end of 1939, the amount owing on the purchase price of the Pueblo Street property was $2,092.60. In 1942, the amount owing on the purchase price of the North Broadway property was $2,412.11. The property at 945-945 1/2 East Twenty Second Street was purchased for $3,250 in 1937, which amount was paid with cash in the guardianship estate. The annual rental of this property was $645 during the fiscal year 1937-1938; *102 it was $494 during the fiscal year July 1, 1938 to July 1, 1939. Mark Yuen, godfather of Owen and Elgin, made a gift of the property at 3750 Pueblo Street to them on or about June 9, 1942. The guardian accepted the gift for them. Mark Yuen bought the property under a land contract, making a down payment of $1,300. The purchase price was $4,300. Mark Yuen made the down payment out of his savings. The balance was paid out of rents from the property and $1,688.07 of Mark Yuen's savings. This property was rented for $35 per month. The property at 1029 North Broadway was purchased by petitioner's wife in August 1942 for and on behalf of Owen and Elgin. A down payment of $1,000 was made; the balance was secured by a first and second trust. The guardian of Owen and Elgin accepted the gift of this property for them. The balance of the purchase price was paid from the income of the guardianship estate. This property was rented for $35 per month. The guardianship estate was administered in accordance with the customary procedures. The guardian had a lawyer. The guardian filed reports and accounts with the Superior Court in which all assets were reported, and all receipts and expenditures *103 of the income of the estate were set forth. The first report of the guardian was filed in the Superior Court in August, 1938, and it was approved by the Court on August 31, 1938. The second report and account was filed in June, 1939, and it was approved on July 21, 1939. The third account was for the period July 1, 1939 to November 15, 1944, and it was filed in March, 1945, and was approved on March 29, 1945. The cash balance in the guardianship account at the end of 1943 was approximately $2,000. The petitioner received, during the taxable years, the rents from the properties in the guardianship account for which he kept separate records in Chinese. Petitioner's accounting records segregated the receipts from each piece of property and the disbursements made for each property. Petitioner paid the expenses of each property. There was no separate bank account for the guardianship properties. The petitioner did not have any legal or equitable title to the properties held in the guardianship account, and he did not own the income of those properties. The properties and the income belonged to the guardian who held them for the minors, Owen and Elgin. Petitioner during the taxable *104 years and as far back as 1937, held funds which belonged to relatives and friends. These funds were impressed with a trust for the owners thereof. The balances in these trust accounts did not constitute income of the petitioner in any of the taxable years. The petitioner, also, made loans to relatives and friends. These were accounts receivable as distinguished from the trust accounts. The petitioner kept accounting records in Chinese of his receipts from and loans to relatives and friends. A separate bank account was not maintained for the funds of relatives and friends. The total amount of the trust accounts held by the petitioner for friends and relatives, and the total amount due to the petitioner from friends and relatives, as of the end of each of the years 1939 to 1943, inclusive, were as follows: Total
Total of
amount of
amounts due
Year
trust funds
petitioner
1939
$3,593.59
$1,500.27
1940
1,886.87
625.27
1941
1,459.99
275.44
1942
2,270.94
275.44
1943
4,024.97
275.44
The petitioner did not make a loan of $1,000, in 1942 or in 1943, to Leng N. Wong. The petitioner and his family lived frugally. During the period in which petitioner *105 has been engaged in business, since 1920, he has been able to accumulate savings. He has carried life insurance. During 1942, petitioner purchased Series "E" United States Savings bonds having a cash value of $7,375; and in 1943, he purchased additional savings bonds having a cash value of $3,931.25. Petitioner's wife provided part of the money for the purchase of all of the bonds out of her cash accumulation. The respondent attempted to reconstruct petitioner's net income for the taxable years by use of the net worth method. The schedule of such reconstruction is incorporated herein by reference. The respondent's schedule of assets of the petitioner for the taxable years is incorrect. Respondent erred in including in assets of petitioner the pieces of property owned by the guardian of Owen and Elgin, the trust accounts of relatives and friends, an alleged loan of $1,000 to Leng N. Wong, and in failing to include in petitioner's assets at the beginning and end of each taxable period the accumulated savings of petitioner, and accounts receivable due from relatives and friends. The inaccuracies in respondent's net worth statement result in an overassessment of petitioner's income *106 for each of the years in question. The errors in respondent's computations of alleged increases in net worth result largely from his failure to take into account cash savings of petitioner of from $6,000 to $8,000 kept in a safe. The petitioner did not realize any taxable net income for 1940 and 1941. His failure to file returns for 1940 and 1941 was not due to fraud, and was not due to willful neglect, it was due to reasonable cause. Petitioner's returns for 1942 and 1943 were not fraudulent with intent to evade tax. The statutory notice of deficiency upon which this proceeding is based was mailed on December 1, 1949, which date was after the expiration of the statutory period, as extended to December 31, 1948 by agreements of petitioner and respondent. Opinion The petitioner's position with respect to the years 1940 and 1941 is that his net income for each year fell below the amount subject to income tax and that, therefore, he did not file returns for those years. He contends that his taxable net income for 1942 and 1943 did not exceed the amounts reported in the return which he filed for cach year; that his returns for 1942 and 1943 were not fraudulent; that the notice *107 of deficiency which gives rise to this proceeding which was mailed on December 1, 1949, was untimely so that determinations of deficiencies for 1942 and 1943 are barred. The statutory period, extended by agreements of the parties, for assessment of tax deficiencies for 1942 and 1943, ended on December 31, 1948. Determinations of deficiencies for 1942 and 1943 are barred unless petitioner filed fraudulent returns. Sections 275(a), 275(c), 276(a), and 276(b), Internal Revenue Code. The Commissioner, by use of the net worth method, has determined that petitioner realized taxable income in 1940 and 1941, and that for 1942 and 1943, he had taxable income in excess of that which he reported in his income tax returns. These determinations give rise to alleged tax deficiencies. To these deficiencies the Commissioner has made 50 per cent additions under section 293(b) of the Code upon his further determination that the petitioner with fraudulent intent to evade tax failed to file returns for 1940 and 1941, and understated his gross income for 1942 and 1943. If petitioner, in fact, realized taxable income in 1940 and 1941, the Commissioner is not barred from determining *108 deficiencies for those years because there was failure to file returns. Sections 276(a), I.R.C. However, unless the returns filed for 1942 and 1943 were fraudulent with intent to evade tax, the determination of deficiencies for those years are barred which the respondent recognizes. Section 276(a). The respondent has the burden of proof to establish fraud with respect to all of the taxable years. Section 1112, I.R.C.; William W. Kellett, 5 T.C. 608, 615, 616. If the respondent fails in this burden with respect to 1942 and 1943, the deficiencies fall as well as the fraud penalties. As for 1940 and 1941, however, the petitioner has the burden of proving that the respondent erred in making the determinations which have given rise to the deficiencies, having failed to file returns for those years. Section 276(a), I.R.C.Welch v. Helvering, 290 U.S. 111, 115; Helvering v. Taylor, 293 U.S. 507. Hague Estate v. Commissioner, 132 Fed. (2d) 775, 776. The respondent used the net worth method of computing taxable income for each of the four years involved for these reasons, primarily; there *109 were increases in the balances, in some years, of petitioner's savings account; the petitioner bought savings bonds in 1942 and 1943; there were pieces of rental property held in a guardianship estate; and the petitioner made expenditures for insurance premiums, for payments on an automobile, and for the school expenses of a son. These factors led to respondent's conclusion that the petitioner in each of the taxable years had taxable income which he failed to report for tax and which was not shown in the accounting records of the petitioner. We need not set forth in detail the respondent's net worth schedule which covers the years 1937 to 1943, inclusive, but it must be noted that the respondent included in petitioner's assets and liabilities, inter alia, all of the property held in the guardianship estate and the trust accounts for relatives and friends. The petitioner introduced in evidence all of his accounting records for 1941, 1942 and 1943, and the Superior Court records of the guardianship estate. He contends that his evidence, which includes testimony of himself, of his wife, and of a Chinese accountant, establish errors in respondent's net worth statement, particularly in *110 the computation of net worth at the beginning of 1940, and at the beginning and end of each taxable period. The respondent does not seriously question the correctness of petitioner's records of receipts in 1941, 1942, and 1943 from his business, of rents collected from the guardianship property, or of the trustee accounts maintained for friends, or of disbursements in the above years. There were a few transactions not recorded in the records of business receipts which were made evident from cancelled checks and bank records which have been explained to our satisfaction and we pass these items momentarily as de minimus. The respondent questions expenditures which exceed annual income as reported, and increases in savings account balances of a few thousand dollars. It is true that increases in bank balances and expenditures in excess of reported income constitute circumstantial evidence of realization of income. Respondent has relied entirely upon such circumstantial evidence. He has not presented any direct proof under his burden of proof, of the receipt of income in any of the years 1940-1943, from any sources other than those which the petitioner's books and tax returns show. *111 In this situation, it must be kept in mind that fraud must be proved by clear and convincing evidence. Suspicious circumstances are insufficient to establish fraud, and even carelessness in and ignorance about keeping complete accounting records will not sustain fraud. Walter M. Ferguson, Jr., 14 T.C. 846, 849; L. Glenn Switzer, 20 T.C. (promulgated June 30, 1953, report no. 110). Fraud cannot be presumed. Since there is no direct proof that the petitioner received income in each of the taxable years which he did not report for tax, we must test the validity of the respondent's computations of alleged taxable income by use of the net worth method in the light of the entire record before us. In a "net worth case," the starting point in the respondent's computation, i.e., his computation of assets, liabilities, and net worth at the beginning of the period under question must be sound. United States v. Chapman, 168 Fed. (2d) 997, 1001; Bryan v. United States, 175 Fed. (2d) 223, affd., 338 U.S. 552; United States v. Fenwick, 177 Fed. (2d) 488. If the petitioner had assets at the beginning of 1940 which the respondent *112 did not include in assets in his net worth statement, and if respondent improperly included other assets in the net worth statement, the respondent's computation of increases in net worth and his determination therefrom of realization of income will be incorrect. And, also, the respondent's conclusion that expenditures and bank balance increases must have reflected unreported income may be wrong. Expenditures and increase in bank balances do not necessarily prove the existence of current income as long as the hypothesis exists that both might have been from sources other than current income. Upon consideration of all of the evidence we conclude that respondent has failed in his burden of proof. We conclude, also, that respondent's computation of net worth at the beginning and end of each taxable period is incorrect for these reasons: The evidence establishes that the guardianship estate was bona fide, that petitioner in the years in question did not have any legal or equitable title to the properties held by the guardian for two minor sons of petitioner, and that rents received from the properties were not petitioner's income. There is no proof that moneys held in trust accounts *113 of relatives and friends constituted income of petitioner. There is no proof that the petitioner and his wife, each, had not accumulated cash savings during a period of twenty years. It has not been shown that the revenue agent who made the investigation of petitioner made any inquiry whether petitioner had on hand at the beginning of each taxable year cash savings which had been accumulated during prior years. The petitioner and his wife testified that each had on hand at the beginning of each of the taxable years cash accumulations of savings which were kept at home in a safe. There is no evidence to refute their testimony on the point, or to contradict their testimony that the savings bonds which were purchased in 1942 and 1943, and other expenditures, were made out of such savings accumulated before 1940. Nor is it unreasonable that savings were accumulated during a period of twenty years. The petitioner did not keep a general ledger in which records of savings and capital assets could have been recorded, as he should have done. He did not keep a record of his savings. His wife kept a loose record of cash which she kept in his safe. The petitioner did not maintain separate *114 bank accounts for funds of others which he handled, as he should have done. He commingled funds of others with his own. These omissions in meticulous accounting give rise to suspicion. On the other hand, the accounting records which petitioner kept and retained, although meager, were substantially correct. A few omissions, referred to above, were due to ignorance of proper accounting requirements and petitioner's explanations of them are not contradicted. Negligence and mistakes are not the equivalent of fraud. The question is whether errors and omissions were made deliberately with intent to defraud the Commissioner. Walter M. Ferguson, Jr., supra, p. 849; Mitchell v. Commissioner, 118 Fed. (2d) 308. The respondent has failed to prove by clear and convincing evidence that there was intent to defraud. It is held, therefore, that errors were made by the respondent at the starting point of the net worth computation and at the end of each period in failing to take into account savings of years before 1940, and in classifying the guardianship estate and the trust accounts of relatives and friends as petitioner's property, and that, consequently, respondent's *115 computations of increases in net worth in each year and of income based thereon are not sound and do not support fraud for any of the taxable years. United States v. Fenwick, supra. It follows that the determination of deficiencies for 1942 and 1943 are barred, and that failure to file a return for 1941 was not due to fraud. It is held, also, that petitioner did not realize income in 1941 in the amount determined by the respondent. Upon all of the evidence we are satisfied that petitioner's records of his gross and net income for 1941, reflecting no taxable net income, justified his belief that no return for 1941 had to be filed, and that his failure to file a return for 1941 was due to reasonable cause and not willful neglect. The issues as they relate to the year 1940 must be considered separately. The petitioner, as is true for 1941, has the burden of proving that respondent's determinations of his net income for 1940, and of the 25 per cent delinquency penalty are wrong. He denies that he had net income for 1940 in the amount of $5,773.79, as determined by the respondent, but he admits that he cannot now produce records to establish that his net income was less *116 than has been determined having lost his account book for 1940. He argues, however, that the computation of net worth increase for 1940 is incorrect, and that even if respondent's computation of his net income based upon expenditures be accepted as correct because of his inability to overcome the prima facie correctness thereof, it does not follow that there is a deficiency in tax for 1940 because he was entitled to report 1940 income on a community property basis and because his personal and dependency credits totaled $3,200, which respondent admits. This argument has been considered and it must be approved. It is unnecessary to set forth in detail the analysis which supports petitioner's argument. It is sufficient to point out that after adjusting respondent's net worth computations for 1939 and 1940 by eliminating from assets in each year the guardianship estate properties, there is no increase in net worth in 1940. It is noted, also, that upon making the same adjustment in 1941, there is no increase in net worth for 1941, either. Thereafter, if we accept the theory, arguendo, that petitioner's expenditures for 1940, as set forth in the statement attached to the deficiency notice, *117 were paid out of 1940 income, we find that, even so, such alleged gross income was not sufficient to produce taxable net income because of allowable personal and dependency credits totalling $3,200, which respondent does not question. That is to say, petitioner was entitled to report income for 1940 on a community property basis, and respondent's own computation, when adjusted to eliminate errors in the net worth statement, does not result in any taxable net income for 1940. This analysis reveals error in respondent's determination of a deficiency for 1940. Helvering v. Taylor, supra. It is held, therefore, that respondent's determination of a deficiency for 1940 is in error, and that petitioner's failure to file a return for 1940 was not due to willful neglect. Decision will be entered for the petitioner.