Cornelius W. Sullivan and Mary E. Sullivan v. Commissioner.
Sullivan v. Commissioner
Docket No. 46943.
United States Tax Court
T.C. Memo 1957-131; 1957 Tax Ct. Memo LEXIS 119; 16 T.C.M. (CCH) 599; T.C.M. (RIA) 57131; July 19, 1957
*119 The Commissioner has determined a deficiency in income tax against petitioners for the year 1950 of $140,357.52, and additions to the tax under section 293(b) and section 294(d)(2), Internal Revenue Code of 1939, for said year in the respective amounts of $70,178.76 and $8,421.45. The principal adjustment made to the net income reported by petitioners on their joint return was "(a) Net profit from gambling business not reported $213,556.65." At the trial of this proceeding petitioners did not appear in person. They were, however, represented by counsel. Counsel for the Commissioner conceded that petitioners were entitled to certain deductions, which aggregated $51,597.37, from the income added by the Commissioner in his deficiency notice. Whereupon counsel for petitioners stated that no evidence would be offered by petitioners contesting the amount of the deficiency as it would be computed under Rule 50, but that petitioners did contest the addition to tax under section 293(b) of the 1939 Code and denied there was fraud. Respondent then introduced evidence to sustain his burden of proof of fraud. Held, part of the deficiency is due to fraud with intent to evade tax and the Commissioner *120 is sustained in his imposition of addition to tax under section 293(b), 1939 Code. In view, however, of the Commissioner's concession that petitioners are entitled to deductions of $51,597.37 from amount of income determined in the deficiency notice, the deficiency will be recomputed under Rule 50, as will also the additions to tax under sections 293(b) and 294(d)(2) of the 1939 Code. John A. McCann, Esq., Frick Building, Pittsburgh, Pa., for the petitioners. David L. Ketter, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioners' income tax of $140,357.52 for the year 1950, and additions to the tax under sections 293(b) and 294(d)(2), Internal Revenue Code of 1939, [1] in the respective amounts of $70,178.76 and $8,421.45. The deficiency is due to the following adjustments made to the net income reported by petitioners on the joint return which they filed for the year 1950. (a) Net profit from gambling busi-
ness not reported
$213,556.65
(b) Net gain from sale of capital
assets not reported
160.48
(c) Error on tax return
.50
*121 The petitioners do not contest adjustments (b) and (c). They do, however, by an appropriate assignment of error contest adjustment (a). They also by an appropriate assignment of error contest the additions to the tax under sections 293(b) and 294(d)(2). Adjustment (a) in the deficiency notice is described therein as follows: (a) It is determined that your gambling income in 1950 was $226,726.15, of which amount only $13,169.50 was reported by you as gambling income for that year. Findings of Fact The petitioners, Cornelius W. Sullivan and Mary E. Sullivan, are husband and wife who, during the taxable year ended December 31, 1950, resided in Pittsburgh, Pennsylvania. During this period neither petitioner Mary E. Sullivan (sometimes hereinafter referred to as Mary) nor petitioners' daughter, Patricia, was gainfully employed. Cornelius W. Sullivan will sometimes hereinafter be referred to as petitioner or Cornelius. During his earliest employment petitioner was engaged in office work. He pursued this type of work in various cities in Pennsylvania and Ohio but was never employed at any one place longer than "a couple of years." Petitioner became familiar with what he termed *122 simple or "common sense" bookkeeping. Years ago petitioner was engaged in the numbers racket and from at least as early as 1947 he has been engaged solely in the gambling business. His gambling activities from the year 1947 included shooting craps and booking bets in baseball, football, and basketball games. Petitioner continued in the gambling business through the taxable year 1950. Petitioner entered the Treasury Lottery business as a promoter in the latter part of 1949 and continued to be so engaged through the entire year 1950. As a promoter, he guaranteed all top line hits or major prizes and, in addition, guaranteed lower line hits or minor prizes to the extent desired by the customer. Petitioner continued his gambling activities, including the Treasury Lottery business, up through May 1951, at which time the Pennsylvania State Police conducted a raid upon his home. Petitioner had no partners in his gambling operations but conducted the business as a sole proprietor. Neither Mary nor petitioners' daughter, Patricia, helped in the operation of the Treasury Lottery business or in petitioner's other gambling activities. Petitioner kept and maintained certain books and records *123 of transactions in the Treasury Lottery business. He did not use the services of a bookkeeper. Some of these records did not cover the entire year 1950, and in some instances these books and records were kept by petitioner in an incomplete and often coded fashion. These books and records were seized by the Pennsylvania State Police in May 1951, as a result of the aforementioned raid upon petitioners' home and they were subsequently obtained by representatives of the Commissioner by means of subpoena. Prior to 1950, petitioner knew that the Federal income tax laws required the reporting of all income received by him from whatever source. He also knew prior to 1950 that gambling income specifically was required to be reported on his income tax return. Petitioners filed their joint income tax return for the taxable year ended December 31, 1950, with the then collector of internal revenue for the twenty-third district of Pennsylvania at Pittsburgh. On this return filed by the petitioners for the taxable year 1950, income was reported in the amount of $13,946.71 and this amount was claimed to represent the entire income from petitioner's gambling activities for that year. The income *124 of petitioners was reported on their joint return in a schedule attached thereto which reads as follows: The following expenditures made from earn-
ings in 1950 represent my income for said year
No other funds spent or saved.
Payments on furniture
1200.00
Paid on home, principal, in-
terest and taxes
2313.00
Taxes paid on 6731 McPher-
son Blvd., Pgh., Pa.
432.00
Cost of living (no luxuries,
vacations, etc.)
3000.00
Investment, $10,000.00 first
mortgage, half of which
represents savings from
prior years
5000.00
Interest received from mort-
gagor
99.50
(1) Estimated income tax
paid during 1950
1125.00
13,169.50
Rents
Brick Duplex 6731 McPher-
son Blvd., Pgh., Pa.
1562.61
Less: Depreciation
318.00
Taxes
432.00
Water
14.40
Insurance
21.00
785.40
777.21
Net Income
13,946.71
Depreciation
Brick Dup. 1-10-47
10600.00 636.00 9964.00 33 1/3 30 1/3 318.00
(1) Balance of income tax paid out of sav-
ings.
The above amount, $13,946.71, represents my
entire 1950 income derived from gambling ac-
tivities.
Petitioners filed their Federal income tax return for the year 1950, as will be seen from *125 the foregoing schedule contained in their return, on the basis of the expenditures method; that is, their income was computed by totaling all of petitioners' personal expenditures for that year. This same procedure was followed in preparing petitioners' tax returns for the taxable years 1947 to 1950, inclusive. These income tax returns were prepared from information furnished by petitioner to a revenue agent whose assistance in preparing the returns was requested by him. On such basis, petitioners' income tax returns, including their return for the taxable year 1950, did not reflect the gross receipts from petitioner's lottery business. In furnishing the information to the revenue agent who assisted in preparing the income tax return for the taxable year 1950, petitioner failed to divulge the existence of the incomplete books and records he maintained on his Treasury Lottery business. Petitioner failed to disclose to the revenue agent who assisted him in preparing petitioners' income tax return for the taxable year ended December 31, 1950, all of his personal expenditures for that year, such as the purchase of a Cadillac automobile for $4,000 in cash. Part of the deficiency for *126 1950 is due to fraud with intent to evade tax. Opinion BLACK, Judge: This proceeding involves a deficiency in income tax of petitioners for the year 1950 in the amount of $140,357.52 and additions to the tax under sections 293(b) and 294(d)(2) in the respective amounts of $70,178.76 and $8,421.45. Petitioners were represented by counsel at the trial but no evidence was presented on behalf of petitioners. At the trial, respondent conceded certain expenditures totaling $51,597.37 as being deductible expenditures incurred by petitioner in the operation of his Treasury Lottery business. Effect will be given to this concession in a computation under Rule 50. It requires no citation of authorities to establish that respondent's determination of the deficiency is presumed to be correct and that the burden of proof rests on petitioners to show that respondent's determination is erroneous. This burden of proof petitioners have failed to discharge - petitioners have made no effort to do so. Therefore, the net income as determined by the Commissioner in his deficiency notice will remain as computed, except it will be reduced by the allowance of a deduction of $51,597.37 conceded by the *127 respondent at the trial, in a computation under Rule 50. But it is well understood, of course, that the burden of proof to sustain his imposition of the addition to the tax for fraud under section 293(b) rests upon respondent. Respondent recognized this fact at the trial and sought to discharge his burden of proof by certain oral testimony and documentary exhibits which he introduced in evidence. Whether there was fraud by petitioners in their joint income tax return which they filed is the only issue which we have here to decide. It seems clear from the evidence in this case, if we should find fraud, it will not be fraud on the part of petitioner's wife, Mary. She had no income and did not participate in the gambling transactions which Cornelius was carrying on. But since the return was a joint return signed by Mary, she will be equally liable for any deficiency which may be determined against petitioners in a computation under Rule 50, including any additions to the tax. It is clear from the evidence that petitioner had large gross receipts from his principal gambling business which has been referred to in the record as "Treasury Lottery business." He also had large payouts *128 which were incurred in his guaranty of the payment of "hits" to customers. Not many details are given in the record as to how this Treasury Lottery business operated. But it is clear enough that it was a lottery in which chances were sold and prizes were given, known as "hits." Petitioner did not testify at the hearing but there was introduced as a part of respondent's case in his effort to prove fraud, a statement which petitioner had made before Gene Panneton, internal revenue agent, and John C. Schwartz, special agent, on March 3, 1952. This statement consists of questions by the revenue agent and the special agent and answers thereto by petitioner, 389 questions and answers appear in this statement and it consists of 33 pages. All of it we have read and considered. In this statement, petitioner stated that prior to 1947 he did not know that gambling gains had to be reported as income, but that in that year he was informed by a revenue agent that he must report such gains for taxation. Since then he said he has done so. He explained, however, that he had not kept sufficient records to enable him to make out his returns from these records. In this statement by petitioner, which *129 was introduced in evidence by respondent, the following question and answer appear: "Q - Now, were your returns for 1947 on file on the basis of what you spent, or were they filed on the basis of what you took in from your gambling activities? "A - They were filed on what I had spent, living expenses, my home, car, car expenses, furniture that I bought, and the increase in bank savings. In other words, anything I spent during the year was marked on there. Also what I paid on my mortgage." The witness then went on to say that he had followed this method of preparing his returns since then, including the year 1950 which we have before us. Manifestly, this method was inadequate. When it is considered that in the taxable year 1950, petitioner was operating a business which has been referred to in the record as Treasury Lottery business, where the gross receipts were several hundred thousand dollars and the payments, so called "hits," were several hundred thousand dollars, it is obvious that petitioner should have kept records from which he could have correctly computed his gains from this business. He did keep some records of a sort and they are in evidence in this proceeding, but *130 they are incomplete and do not embrace the entire taxable year. Manifestly, petitioner's failure to keep full and adequate records showing the operation of this Treasury Lottery business was negligence on his part. But negligence, however great, does not amount to fraud. Mitchell v. Commissioner, 118 Fed. (2d) 308. In the Mitchell case, the Fifth Circuit held that fraud means actual intentional wrongdoing and the intent required is the specific purpose to evade a tax believed to be owing. Mere negligence, slight or great, is not the equivalent of fraud. See also our decision on remand in William E. Mitchell, 45 B.T.A. 822. In a civil action respondent must prove fraud by clear and convincing evidence, that is, he must prove that the petitioner intentionally evaded a tax believed to be owing. Section 1112; Wiseley v. Commissioner, (C.A. 6) 185 Fed. (2d) 263. The question of fraud is one of fact and must be decided on the basis of all the conditions and circumstances surrounding the transaction. Wallace H. Petit, 10 T.C. 1253; William W. Kellett, 5 T.C. 608; M. Rea Gano, 19 B.T.A. 518. Respondent's principal *131 contention is that the evidence shows that petitioner had considerable more income in 1950 than the method which petitioner used disclosed, and therefore this substantial understatement of income by petitioner was due to fraud with intent to evade tax. As we have already stated, petitioner did not testify at the trial but respondent introduced in evidence a statement of considerable length made by petitioner before revenue agents consisting of questions and answers. These questions and answers disclose that although petitioner was handling large sums of money in his Treasury Lottery business, the records which he kept of these transactions were so incomplete that he claimed he could not compute his net income from them. Therefore, he used the expenditures method which we have heretofore described. But even in the use of this expenditures method, it seems clear that petitioner omitted substantial income from the joint return. For example, petitioner's statements before the revenue agents show that in 1950 petitioner purchased a Cadillac automobile for $4,000. That expenditure is not included in the list of expenditures shown on his 1950 income tax return from which he calculated his *132 net income for 1950. In petitioner's statement to the revenue agents the following questions and answers occur: Q - What year Cadillac do you drive? A - 1950. Q - Where was that purchased? A - Wilkes Barre. Q - How much? A - Around $4,000, that's what they sell for. Q - Cash? A - Yes, that would be cash. Q - Did that cash come from savings or depository of some kind? A - The same place all the cash comes from. If petition was making a bona fide effort to return all of his 1950 income by the expenditures method in the manner which he explained, it certainly seems that he should have returned as income the $4,000 which he concedes he expended for a Cadillac automobile in 1950. He gave no explanation in his statement as to why he did not do so. It is too large an amount to be considered an accidental omission. Then, revenue agent Gene Panneton, who was one of the agents who examined petitioner as to 1950, testified at the hearing. He identified certain records which had been kept by petitioner in the operation of his lottery business. These records had been obtained from the Pennsylvania State Police who conducted a raid on petitioner's home. These records were *133 introduced in evidence at the hearing as respondent's Exhibits A, B, C, and D. Agent Panneton testified that he had carefully examined these records and that while they were incomplete, he had done the best he could with them and had concluded from a study of these records that petitioner's gross receipts from his gambling operations were $798,552.85 in 1950, and that the amount which he paid out in lottery prizes (hits) was $561,744.81. The agent said he arrived at a gross profit of $236,808.04, and that he allowed as verified expenses, $10,081.89, leaving a net profit of $226,726.15, and that inasmuch as petitioner had reported on his return net income from gambling operations of $13,169.50, he recommended in his revenue agent's report an addition of $213,556.65 gambling income to that reported by petitioner on his return. As we have already stated, the Commissioner conceded at the hearing that in a recomputation under Rule 50, petitioner should be allowed additional business expenditures which amount in the aggregate to $51,597.37. These additional deductions will, of course, very substantially reduce the deficiency determined by the Commissioner and will also reduce the additions *134 to the tax. The facts will remain, however, that despite respondent's concession of these additional deductions, there will still remain a large amount of income from petitioner's gambling operations in 1950 which he did not report on his return. Therefore, we conclude that respondent has shown a substantial omission or understatement of petitioner's 1950 income on his return. It is not necessary to sustain the fraud issue that respondent prove the precise amount of income omitted where the evidence shows that the amount omitted is so substantial that the taxpayer must have been aware of its omission. Estate of W. Y. Brame, 25 T.C. 824, pending on appeal to Fifth Circuit. The proof of fraud ordinarily must be based upon the surrounding circumstances. As this Court stated long ago in M. Rea Gano, ( 1930) supra: " To establish fraud by direct proof of intention is seldom possible. Usually it must be gleaned from the several transactions in question and the conduct of the taxpayer relative thereto." After a careful consideration of the whole record of evidence submitted to us, we made a finding in our Findings of Fact that "Part of the deficiency for 1950 is due to fraud *135 with intent to evade tax." The Commissioner is, therefore, sustained in his imposition of addition to tax under section 293(b). The addition to tax will be recomputed under Rule 50. Addition to Tax Under Section 294(d)(2)
The petitioners filed a declaration of estimated tax for 1950 and paid $1,125 thereon. The Commissioner has not determined an addition to the tax on account of petitioners' failure to file a declaration of estimated tax. But he has determined an addition to tax under section 294(d)(2) for underestimation of tax. Nothing was said at the hearing concerning this addition to tax and respondent has not mentioned it in his brief. Petitioners have not filed any brief. Apparently, there will be some underestimation of the tax over that which petitioner declared when he filed his declaration of estimated tax in 1950. Section 294(d)(2) prescribes how any additions to the tax shall be computed under its provision. The method which it prescribes should be followed in a computation under Rule 50. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1939, as amended.↩