Ivan B. Reash v. Commissioner. Ivan B. Reash and Grace M. Reash v. Commissioner.
Reash v. Commissioner
Docket Nos. 35691, 35692.
United States Tax Court
1953 Tax Ct. Memo LEXIS 14; 12 T.C.M. (CCH) 1434; T.C.M. (RIA) 54004; December 28, 1953
*14 Upon the evidence, held that part of the deficiency for each taxable year was due to fraud with intent to evade tax. James E. Mitchell, Esq., for the petitioners. James F. Kennedy, Jr., Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in the income tax liability of Ivan B. Reash for the years 1944 through 1947 (Docket No. 35692), and 50 per cent additions to the deficiencies for fraud under section 293 (b) of the Code; and a deficiency in the income tax liability of Ivan and Grace Reash for the year 1948 (Docket No. 35691), and the 50 per cent addition to the deficiency for fraud, as follows: 50 per cent addition
Year
Deficiency
Sec. 293(b), I.R.C.
1944
$ 1,912.74
$ 956.37
1945
5,541.74
2,770.87
1946
3,494.82
1,747.41
1947
8,533.01
4,266.51
1948
5,401.00
2,700.50
Total
$24,883.31
$12,441.66 In Docket No. 35691, the Commissioner also determined an addition to the tax for 1948 under section 294 (d) (2), in the amount of $337.97 because petitioners substantially understimated the estimated tax. The petitioners concede that income was understated *15 in each year, and that the deficiencies in tax were correctly determined by the respondent. The pleadings present two questions for decision; whether part of the deficiency for each year was due to fraud with intent to evade tax; and whether the petitioners substantially underestimated the estimated tax for 1948. Findings of Fact The facts which have been stipulated are found as facts. The stipulation is incorporated herein by reference together with the attached schedules and exhibits. The petitioners are husband and wife, and they are residents of New Waterford, Ohio. Ivan B. Reash filed separate returns for the years 1944 through 1947. Ivan and Grace Reash filed a joint return for 1948. The returns were filed with the collector for the eighteenth district of Ohio. Ivan B. Reash is referred to hereinafter as "the petitioner" because the issue presented relates to the income of his business. The deficiency notices giving rise to the petitions in each proceeding were mailed on April 12, 1951. Prior thereto, on January 2, 1951, Ivan B. Reash paid the deficiencies, plus interest, for all of the years involved. Petitioner's education did not go beyond the eighth grade. Petitioner *16 and the members of his family have been members of the Evangelical and Reformed Church of Columbiana, Ohio, for 45 years. He enjoys a good reputation in his community. He served in the armed forces during the first World War for 22 months in the United States, France, and Germany. When he came out of the services he worked in a machine shop in Columbiana, Ohio. Petitioner purchased a farm of 105 acres after the end of the first World War. He still operates the farm. In 1930, petitioner began a business in a small way, located at his farm, of selling farm machinery at retail. He was a dealer for a distributor. At first he sold potato machinery; later he sold tractors and all kinds of machinery used in farming. In 1944, petitioner rented space in Columbiana, about three miles from New Waterford, and moved his retail farm machinery business there. In 1947, he started building a building, himself, in Columbiana which is partly completed, in which petitioner has invested $42,000. Petitioner hired some labor in the construction of the building. In some instances the worth of the labor was applied by petitioner to the purchase of a machine bought by the person performing the labor. Since *17 1949, petitioner's business has been incorporated. When petitioner began the business of selling farm machinery at retail he sold no parts, or a very small quantity, if any. Later he sold parts, miscellaneous items, and service of farm machinery. He took in used machinery in trade-ins. Much of his stock in trade was purchased from Allis-Chalmers Company. For each of the years 1944 through 1948, petitioner gave financial statements to Allis-Chalmers which were prepared with the assistance of a representative of the company. Petitioner signed the financial statements. The financial statements listed, inter alia, merchandise of petitioner such as tractors, harvesters, implements, other machinery, "Allis-Chalmers parts", "other parts", "other merchandise", and "tires." With respect to parts, the financial statements for the years 1944 through 1948 stated that petitioner had parts in the amounts set forth below. Other
Mer-
Allis-Chalmers
Other
chan-
Year
Parts
Parts
dise
Tires
1944
$2,600 (Estimated)
$ 650
none
none
1945
3,200 (Estimated)
1,700
none
none
1946
3,800
none
$2,216
$1,006
1947
4,300
none
400
1,800
1948
4,500
none
7,300
none
*18 Petitioner filed income tax returns as far back as 1930. William Warren, an attorney in Lectonia, prepared the returns for years prior to 1944. He died in 1943 or 1944. For the years 1944 through 1948, Lynn R. Riddle, an attorney, prepared petitioner's returns. Petitioner signed his returns for each of the years 1944 through 1948. He "looked over" his income tax returns before he signed them. Petitioner did not keep regular books of account for his farm machinery business during the years before 1944, or for the years 1944 through 1948. He had incomplete records of his business, however, consisting of invoices for purchases by him, a farm machinery order book, sales slips for the sales of parts and services. Petitioner maintained a commercial bank account during the period in question and he kept his cancelled checks, checkbook stubs, and bank statements. His bank account was at the Union Bank in Columbiana. Petitioner kept an up-to-date, running account on checkbook stubs showing deposits, withdrawals and balances. Petitioner recorded sales of machinery in the machinery order book in which he entered the item, the selling price, the amount paid in cash, allowances on tradeins, *19 and the unpaid balance. Sales of parts and miscellaneous items were not entered in any book. The individual sales slips, copies of which were given to customers, petitioner retaining the original copies, were the only records of such sales. Petitioner kept the invoices for both machinery and parts. Warren and Riddle made up petitioner's income tax returns from information supplied by petitioner. The returns were prepared on a cash basis. Petitioner preferred reporting income on a cash basis because it was too much trouble to take inventories. The amount of gross receipts reported in the returns was computed by petitioner by adding up costs from the total of invoices of machinery and adding a mark-up of 20 or 25 per cent. Actual receipts from sales of machinery were not given to the person who made up returns. Receipts from sales of parts and miscellaneous items were not included in the sum reported in the returns as gross receipts. Receipts from the sales of parts and miscellaneous items were not reflected in the returns for the taxable years involved here. Nothing relating to parts was reflected in the petitioner's income tax returns. Expenses reflected in the returns were compiled *20 from cancelled checks and bills. Invoices and bills were destroyed a few years after returns were made up and filed. Petitioner understood, during the taxable years, the meaning of "profit", and that he was supposed to pay income tax on the profit he realized from his business. No one told him that he should omit parts, and receipts from parts from his income tax returns. When petitioner first employed Riddle to make up his returns, he asked him not to require him to use inventories or supply inventory figures. On schedule C of each return for the years 1944 through 1948, no inventory figures are shown except that on the 1944 return an opening inventory for 1944 was shown. In making up tax returns for petitioner, Riddle entered on a return the figures given him by petitioner. He did not verify any of the figures. He did not examine any of petitioner's records. For figures relating to cost, in a tax return, Riddle computed, or estimated, cost as 75 per cent of a total figure which had been computed on the basis of a 25 per cent mark-up. When petitioner first went to Riddle, he told him that Warren had been making up his returns in a particular way, and he asked Riddle to make *21 up his returns in the same way. Riddle did not know, when he made up the tax returns, that petitioner sold parts and services, and he did not know that petitioner had any records, such as sales slips, of his sales of parts. In 1949, an internal revenue agent called upon petitioner to examine his books for his business of 1944 through 1948 in the course of the audit of the tax returns for those years. At that time, petitioner's basic records for the taxable years were no longer available. The agent, therefore, attempted to reconstruct gross receipts from sales from bank deposits and bank statements. The agent computed figures from gross sales and submitted them to petitioner, suggesting that he have an auditor recompute his income, also. As a result of this suggestion, petitioner employed, in the fall of 1949, John Woodward, a certified public accountant and member of the firm Woodward and Company to make an audit. He went over all the available records of petitioner for the taxable years including cash sales slips, order books, invoices, bank statements, and cancelled checks. He also had a complete inventory of all goods owned or held by petitioner made as of September 30, 1949. Woodward *22 had available, for the years 1944 through 1948, all the bank statements and cancelled checks, all the cash sales slips representing sales of parts and baler twine which had not been reflected in tax returns, machinery sales books for part of the period - part of 1946, and for 1947 and 1948, and some paid invoices which had been retained in petitioner's files. Paid invoices were not available for all the years in question. Woodward made a tabulation of sales of parts for the taxable years. Petitioner's sales of parts in each of the taxable years amounted to the following: Year
Parts Sales Omitted
1944
$ 6,923.25
1945
25,928.80
1946
18,218.89
1947
27,655.40
1948
19,722.36 The parts sales, set forth above, were not included in gross income in petitioner's tax returns, and were not reflected in any way in petitioner's returns. Included in the above figures are sales of baler twine. During 1947 and 1948, petitioner purchased $23,691 of baler twine, the hemp twine used in binders. The Commissioner's agents reconstructed petitioner's income for the taxable years by the bank deposit method. They also recomputed his taxable income by use of the increase in net *23 worth method. Petitioner cooperated with the agents of the Commissioner when they examined his available records and made the audit examinations. He, also, cooperated with Woodward. The net income reported in the tax returns and the correct net income for the taxable years were as follows: Net Income
Correct
Year
Reported
Net Income
1944
$2,733.00
$ 9,302.24
1945
2,641.10
17,618.38
1946
845.97
14,148.28
1947
5,991.33
26,160.76
1948
5,341.99
25,592.41
Petitioner knew that for each of the taxable years, the profit realized from sales of parts was not reported in his tax return for each year. Part of the deficiency for each of the years 1944 through 1948, inclusive, was due to fraud with intent to evade tax. Opinion The petitioner admits that his income for each of the taxable years was understated. He, therefore, concedes the tax deficiencies but he contends that none of the deficiencies were due to a fraudulent intent to evade tax. The respondent has the burden of proof under the issue presented. Fraud must be established by clear and convincing evidence. Henry S Kerbaugh, 29 B.T.A. 1014, 1016. Upon consideration *24 of the entire record, it is concluded that the respondent has established that the petitioner, Ivan Reash, fraudulently intended to evade part of his income tax for each of the years 1944 through 1948 by failing to report all of his income in each of these years. Although petitioner had little formal education, it is clear that he possesses business acumen, and that he was entirely aware of the requirement that all of his income was subject to tax. He has shown by his own testimony that he understood the meaning of business profit, and that he was fully aware that he was not providing those who made up his tax returns with figures showing or reflecting a substantial part of his annual sales, sales from parts and miscellaneous items. He kept records of sales of parts but he did not give those who made out his returns any information about such purchases and sales, even though he knew that in order to compute accurately the entire profit of his business for each year, the sales of parts must be included. When asked why he did not advise Riddle about the parts sales he replied, "I never gave it a thought at all." We cannot accept such a patently lame excuse for petitioner's failure *25 to report parts sales to those who made out his tax returns, and for his failure to be sure that parts sales were reflected in gross and net income, when the volume of such sales was from $6,900 to over $25,000 each year, particularly in the face of the repeated and continuous omission of parts sales from the returns. Isolated errors or discrepancies in records may be insufficient to establish a fraudulent intent to evade tax, but where large amounts of income unquestionably received are consistently and repeatedly omitted from tax returns, and where the explanation for such omissions is patently weak or incredible, then the conclusion is inescapable that the taxpayer intended to understate his true income. M. Rea Gano, 19 B.T.A. 518; William W. Kellett, 5 T.C. 608; Charles A. Rogers, 38 B.T.A. 16, affd. 111 Fed. (2d) 987; Manos v. Commissioner, 187 Fed. (2d) 734. The facts surrounding petitioner's method or reporting income for each year demonstrate a fraudulent intent to evade taxes. Petitioner, for none of the years involved, ever attempted to compute his actual gross receipts for inclusion in his income tax *26 returns. He did not add the total of sales of machinery in each year. He did not add the total of parts sales each year. He did not total his bank deposits in each year. Petitioner admits that he could have done so. His excuse for his failure is that he did not have time to do so. A taxpayer's duty and obligation to correctly and honestly report his income for each year in full cannot be taken so lightly. Petitioner, prior to 1944, and during the taxable years, developed and managed a profitable and growing business. He had filed income tax returns since about 1930. He had dealt with business firms and banks and knew about costs, inventories, mark-ups, and profits. Upon a careful review of all of the evidence and upon consideration of the inferences reasonably to be drawn therefrom, it is held that the respondent has met his burden of proving fraudulent intent on petitioner's part. The additions to the deficiencies of 50 per cent thereof under section 293(b), I.R.C. are sustained. For the year 1948 (Docket No. 35691), under section 294(d)(2), the Commissioner made addition of $337.97 to the tax because the estimated tax for 1948 was substantially understimated. *27 Petitioner has apparently conceded that this determination is correct having failed to introduce any evidence or to argue the point on brief. Furthermore, he has conceded that income for 1948 was substantially understated. Decisions will be entered for the respondent.