ZABELLE EMERZIAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39109.   Promulgated July 16, 1953.

*William D. McKee, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

**OPINION.**

VAN FOSSAN, *Judge:* The sole question in issue is whether the returns filed by the petitioner and her husband for the year 1949 constituted a joint return or whether petitioner filed a separate return for that year.[1] The Findings of Fact reveal that an accountant prepared two Forms 1040 for the petitioner and her husband. One form bore only her name and was signed only by her. The question whether the husband was making a separate return for 1949 was answered in the affirmative. A similar situation was true for her husband. On her Form 1040, however, the petitioner listed a loss of $3,102.12. The only reference given with respect to this loss is the designation that it was "from return of spouse." On Schedule D, attached to her Form 1040, is listed the gain from the sale of 17,979 1/16 shares of K. Arakelian, Inc. The schedule bears the notation "1/2 to spouse" and listed on her return is half of the gain of $80,331.79, or $40,165.89. The Form 1040 of petitioner's husband similarly includes the sum of $40,165.90 as a long-term capital gain, which is denoted "From spouse's return." The Form 1040 of petitioner's husband also discloses that a loss was suffered from farming operations which was divided in half along with salary and dividend receipts to create a loss of $3,102.12 listed on the form for each spouse. The total tax shown on the two forms is the tax which would be due if a joint return was filed. The respondent computed the petitioner's tax on the basis of the separate return.

Although the accountant made out separate forms for the petitioner and her husband and indicated by answers to questions that separate returns were being filed, he combined their income and losses for purposes of computing tax, and, in effect, reached the tax result of a

---

[1] SEC. 51. INDIVIDUAL RETURNS.

(a) REQUIREMENT.—Every individual having for the taxable year a gross income of $600 or more shall make a return, which shall contain or be verified by a written declaration that it is made under the penalties of perjury. Such return shall set forth in such cases, and to such extent, and in such detail, as the Commissioner with the approval of the Secretary may by regulations prescribe, the items of gross income and the deductions and credits allowed under this chapter and such other information for the purpose of carrying out the provisions of this chapter as may be prescribed by such regulations.

(b) HUSBAND AND WIFE.—

(1) In general.—A husband and wife may make a single return jointly. Such a return may be made even though one of the spouses has neither gross income nor deductions. If a joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

joint return. To do so the accountant not only combined their community property income but also petitioner's separate property gain from the sale of shares in K. Arakelian, Inc. The respondent disputes the contention that the stock was the petitioner's separate property, but, inconsistently, in order to determine a deficiency in tax against the petitioner, he was required to treat the stock as her separate property in order to tax her with the full gain thereon. We have no doubt that the shares of stock in K. Arakelian, Inc., were the petitioner's separate property and the gain from the disposition thereof was purposely divided in order to obtain the advantages which flow from a joint return. The taxpayers did not understand the technical terms "joint" and "separate" returns, nor apparently did the accountant whom they employed to prepare their returns. However, the weight of the evidence points clearly to the conclusion that they wished to achieve the result of filing a joint return although they adopted an erroneous method of doing so. The fact that the petitioner alone signed her Form 1040 is not conclusive that a separate return was filed. *Myrna S. Howell*, 10 T. C. 859, affd. 175 F. 2d 240; *W. L. Kann*, 18 T. C. 1032. Nor is the answer to the question whether a separate return is being filed by the spouse determinative of the issue of whether a joint or separate return was filed. *Anderson* v. *United States*, 48 F. 2d 201; *L. B. Foster*, 26 B. T. A. 1328; *William W. Kellett*, 5 T. C. 608; *Eva M. Manton*, 11 T. C. 831.

In the present instance, the petitioner and her husband indicated their desire to file a joint return by dividing the petitioner's income from the sale of her separate property, as well as their community property, between herself and her husband. The computation of the tax and division of community and separate property income lend corroboration to the testimony of the petitioner and her spouse that it was their intent to file a return which would allow the splitting of all their income. *Strich* v. *Westover*, 8, F. Supp. 40. See also *Louis M. Roth*, 17 T. C. 1450.

Albeit the authorities cited do not disclose a situation precisely parallel to the present wherein both spouses filed forms but relate to the situation where one return was erroneously designated a joint or separate return, we are of the opinion that the rationale of such decisions is applicable here. If the erroneous designation of the election of the type of return filed is insufficient to bind the taxpayers to the statement made on such return in the light of all the facts as in *Anderson* v. *United States, supra; L. B. Foster, supra; William W. Kellett, supra;* and *Eva M. Manton, supra*, the erroneous designation of election on two forms filed by the taxpayers should receive similar disposition provided the facts warrant the conclusion that this designation was erroneous.

In *Myrna S. Howell, supra,* where one spouse only signed a return, it was held that this did not preclude finding it to be a joint return against the proper factual background. And where one spouse not only failed to sign the return in question but signed a Form 1040 to obtain a refund, it was held nevertheless that a joint return was filed in *Louis M. Roth, supra.* So here the fact that the taxpayer signed two forms does not preclude a holding that, together, they amounted to a joint return.

One impressive fact is that, in the instant case, each Form 1040 was incomplete by itself without reference to the other. Each Form 1040 referred to the return of the other spouse, as to the source in one instance of a loss, and, in the other, as to the source of a capital gain. To constitute a complete return for either, each form must be read in conjunction with the other. While such erroneous procedure is not to be approved as a practice, each case must be governed by the then present facts. The petitioner and her husband were not informed as to the correct manner and method of achieving the benefits of splitting their separate property income, as was their intention. They relied upon an accountant, who failed to follow the correct procedure, for obtaining the desired result. The petitioner and her husband accepted the form prepared by the accountant and relied thereon. The inadequacy of the advice given cannot be attributed to the petitioner as a deliberate choice of a knowing person to file a separate rather than a joint return. Here the intent of the taxpayer to get the benefit of a joint return was clearly established.

No such intention was manifested in the recent case of *Elvina Ratto,* 20 T. C. 785, wherein the petitioner and her husband, in their 1946 returns, revealed only income from community property in which each spouse had an equal interest under the law of California. The question there posed was whether the taxpayer had omitted from her return 25 per cent of her gross income. The observations of the Court as to the requirements of a "single return jointly" had reference to the general requirements of Form 1040 and are not to be construed as laying down a different rule from that here intended. The facts in the *Ratto* case showed a clear intention to file separate returns. Not only did they sign separate forms stating therein that they were filing separate returns but they computed the tax liability on the basis of separate returns. Here the weight of the evidence clearly shows an intention to achieve the benefits of a joint return and the tax as computed was the tax due on a joint return.

On the record before us, we hold that the returns filed by taxpayer and her husband constituted a joint return.

*Decision will be entered under Rule 50.*