**Roy A. KIESLING and Ninon Kiesling, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 9374.

United States District Court
S. D. Texas,
Houston Division.

Jan. 3, 1958.

William H. Scott, Jr., Houston, Tex., for plaintiffs.

Malcolm R. Wilkey, U. S. Atty., Houston, Tex., for defendant.

HANNAY, Chief Judge.

This is a suit for refund of income taxes for the year 1949 in the sum of $3,322.17, with interest thereon. The case was submitted to the Court, a jury having been waived.

### Findings of Fact

In January, 1949, plaintiffs (who at all times material hereto were husband and wife) filed a joint Declaration of Estimated Tax for the year 1949, and, thereafter, timely made periodical payments of such Joint Declaration, making the final payment on January 15, 1950. On or before March 15, 1950, each plaintiff filed a Form 1040 Income Tax Return for the calendar year 1949, and each of the plaintiffs signed both of the said Forms 1040.

The tax returns were prepared for the plaintiffs by Francis X. Houlahan, Certified Public Accountant, with the firm of T. B. Trotter. Such accountant treated the entire income as though it were a community property of said Kieslings, thereby lumping all of the income together and reporting half on each return. Attached to each of the returns were schedules which were identical in explanation of the supposed community income, which returns were prepared on the ditto machine, the only difference being the appropriate names were blocked as were necessary.

The chief item of income was return from oil royalties which was a separate income from the properties of Mr. Roy Kiesling.

Mr. Houlahan testified that in the preparation of the returns it was his intent to prepare separate individual returns rather than a joint return, and his purpose was so that he could take a sum of $1,000 as a capital loss, and that if a joint return was filed the parties would only be able to take a single $1,000 figure as a capital loss. He was not aware that the oil royalties which was Mr. Kiesling's separate income could not be split and one-half separately reported by each spouse, and had he known that the oil royalty income could not be split, he would have prepared one 1040 Form and taken one $1,000 capital loss deduction.

It is stipulated that the sole question of fact before the Court is whether the taxpaying claimants by the filing of two Forms 1040 intended to file a joint return, and the issue of law is that whether the two Forms filed constituted a joint return.

The taxpayers did not understand the technical terms "joint" and "separate" return.

### Discussion

The applicable statute for the year 1949 (26 U.S.C.A. § 51) is as follows:

"§ 51. Individual returns

(a) *Requirement.* Every individual having for the taxable year a gross income of $600 or more shall make a return, which shall contain or be verified by a written declaration that it is made under the penalties of perjury. * * *

(b) *Husband and wife.*

(1) In general. A husband and wife may make a single return jointly. Such a return may be made even though one of the spouses has neither gross income nor deductions. If a joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."

Mrs. Ninon Kiesling, at the bottom of page 16 of the Reporter's Transcript of Evidence, testified as follows:

"Q. Was it your intention with respect to your income that your ac-

countants take advantage of the splitting of the income advantages that the law allows you?

"A. Well, yes, I feel that that would be their obligation, and was certainly our intention.

"Q. It was your intention to pay the lowest possible tax on your joint income?

"A. Yes."

Mr. Kiesling's testimony was to the same effect, and it is also important to note that for many years, parties have maintained joint bank accounts. Also, for some twenty-five years, Trotter & Company has made out tax returns and in general audited evaluation of the Kiesling family. The Kieslings had absolute confidence in, and they relied blindly upon, the Trotter firm to do what was correct for them with reference to making out of such tax returns.

The question of intention is further shown by the reference made in the original returns of Petitioners to that of the mother of Mr. Kiesling. In that connection, it is well to note that in the case of Emerzian v. Commissioner of Internal Revenue, 20 T.C. 825, 829, the Court said:

"One impressive fact is that, in the instant case, each Form 1040 was incomplete by itself without reference to the other. Each Form 1040 referred to the return of the other spouse, as to the source in one instance of a loss, and, in the other, as to the source of a capital gain. To constitute a complete return for either, each form must be read in conjunction with the other. While such erroneous procedure is not to be approved as a practice, each case must be governed by the then present facts. The petitioner and her husband were not informed as to the correct manner and method of achieving the benefits of splitting their separate property income, as was their intention. They relied upon an accountant, who failed to follow the correct procedure, for obtaining the desired result. The petitioner and her husband accepted the form prepared by the accountant and relied thereon. The inadequacy of the advice given cannot be attributed to the petitioner as a deliberate choice of a knowing person to file a separate rather than a joint return. Here the intent of the taxpayer to get the benefit of a joint return was clearly established."

The United States in its brief strongly urges the proposition that where two returns are separate returns in all respects except that they both bear the signatures of husband and wife, the returns must be treated as separate returns. The Government argues that each return was complete in itself in spite of reference to the other. It strongly relies on Ratliff v. Commissioner, 13 B.T.A. 644. This case, which was decided on a return made in 1922 by a husband and wife living in a community property state, held that taxpayer

"* * * consciously and intentionally filed a joint return. This was induced, it is true, by a belief that the total tax would not be greater than it would be under separate returns by himself and wife, but it was a freely *elected* act and the petitioner is bound by it." (Emphasis supplied.)

In the case of McIntosh v. Wilkinson, D.C., 36 F.2d 807, 810, the Court held the principles governing election and its incidents are equitable, and the considerations which deal with finality or irrevocability are all directed toward fairness and equity as an objective, and, further, in that case, the Court said:

"* * * It follows that where an election has been made in ignorance or under a mistake as to the real condition and value of the properties, or under a mistake as to the real nature and extent of the party's own rights, such a mistake is regarded as one of *fact*, rather than of *law*; the election itself is not binding, and a court of equitable powers will permit it to be revoked unless the rights of third persons have intervened which would be interfered with by the revocation."

(Emphasis supplied.) Pomeroy Equity Jurisprudence (3d Ed.) 512.

To further clarify this point, see Johnsen v. American-Hawaiian S. S. Co., 9 Cir., 98 F.2d 847, 851:

"Pomeroy, in his work Equity Jurisprudence (4th Ed. 1918), Vol. 2, § 849, p. 1731, recognizes that a mistake of the type here alleged to have been made is essentially a mistake of *fact* as distinguished from a mistake of *law*. He says that in the great majority, if not all of the well considered opinions, relief against such a mistake, i. e., *a mistake as to antecedent existing legal rights* as distinguished from *a mistake as to the legal effect of an act,* 'has almost always been granted.'" (Emphasis supplied.)

In conclusion, taxpayers did not know of their antecedent existing legal rights; their accountant likewise did not know of such rights; they depended upon said accountant and acted upon his misadvice; their action, therefore, did not become their voluntary or intentional decision upon which they would be bound.

### Conclusions of Law

**1.**

I conclude, as a matter of law, that this Court has jurisdiction over the parties and subject matter herein involved.

**2.**

I conclude, as a matter of law, that the returns filed by plaintiffs herein constituted a joint return for 1949.

**3.**

I conclude, as a matter of law, that the plaintiffs had made no election herein, and that they are entitled to have judgment entered for them for the amount sued for, to-wit, Three Thousand Three Hundred Twenty-Two and 17/100 Dollars ($3,322.17), plus interest thereon from and after October 27, 1952, less adjustment of interest correction due the Government at the time of entry of judgment herein.

Clerk will notify counsel.