PATRICIA S. HAYES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hayes v. Commissioner
Docket No. 7176-73.
United States Tax Court
T.C. Memo 1975-223; 1975 Tax Ct. Memo LEXIS 152; 34 T.C.M. (CCH) 976; T.C.M. (RIA) 750223; July 7, 1975, Filed Sidney A. Soltz, for the petitioner. Kevin A. Suffern, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined deficiencies in the Federal income tax returns of the petitioner for the taxable years 1963, 1964, and 1965 in the amounts of $12,995.57, $9,045.33, and $1,394.92, respectively. The primary *153 issue for our decision is whether the petitioner qualifies as an "innocent spouse" pursuant to section 6013(e)[1] so that she may be relieved of liability for tax. FINDINGS OF FACT Some of the facts have been stipulated. Such facts and the exhibits attached thereto are incorporated herein by this reference. The petitioner filed a Federal income tax return for the taxable year 1963 with the district director of internal revenue, Jacksonville, Florida. Joint Federal income tax returns for the taxable years 1964 and 1965 and an amended Federal income tax return for the taxable year 1964 were filed with the district director of internal revenue, Jacksonville, Florida, by the petitioner and her husband. At the date of the filing of the petition herein and during the years in issue, the petitioner's place of residence was Fort Lauderdale, Florida. The petitioner was married to Robert Hayes in 1961 and was divorced from him in 1971. They had three children and the petitioner had one by a previous marriage. On divorce, the petitioner received the home on which mortgage *154 payments had been made during these years. Prior to her marriage, the petitioner had completed the 10th grade of high school and a bookkeeping course at a vocational school in which she received an "A" grade. She also had some familiarity with the handling of accounts receivable, accounts payable, and the posting of bills and other items. Robert Hayes, the petitioner's husband, was a franchise salesman for various corporations, including National Credit Service of Florida, Inc., National Credit Service of San Mateo, California, and Silitronic Chemical Corp. and as such he was away from home much of the time in Texas and elsewhere. On December 9, 1970, he was convicted of willfully attempting to evade or defeat tax by filing false returns for the years 1963 and 1964 in violation of section 7201 and section 7206(1). Early in 1961, the petitioner and her husband opened a checking account at the Bank of Hallandale, Hallandale, Florida. Telling her that he was going to set her up in business, Robert Hayes set the account up under the name of "Saad Investments" and instructed the petitioner to sign the signature card in her maiden name, Patricia A. Saad. However, this account and its *155 successor at another bank was subsequently used by the petitioner and her husband as their personal account to pay everyday expenses including house payments. Her husband being away much of the time, the petitioner was the one who handled the account. Deposits to this account consisted of monies from various sources. They included commissions that Robert Hayes had earned as a salesman, loans received from various persons, including the petitioner's mother and mother-in-law, and also miscellaneous deposits which petitioner was told were the result of business deals that Robert Hayes had engaged in. At her husband's directive, the petitioner signed signature cards for other banks including one for a Saad Investment Co. No. 2 account in Dallas, Texas. However, the only bank statement or correspondence that she received was concerning their household account at the Bank of Hallandale and its successor. Robert Hayes sent records of income and expenses that he incurred on the road to the petitioner. The only commissions that the petitioner actually knew that Robert Hayes received were those reported by the respective payors on various Forms 1099, copies of which he sent or gave to *156 the petitioner. [2] Her husband, in addition, told her of receiving some other income from time to time. At the beginning of each year, the petitioner would sort out the notices and receipts that she received during the prior year and attempt to segregate income and expenses. When this was completed, the petitioner would take these segregated items along with the checkbook and bank statements on their personal checking account to their accountants who prepared their returns. Each item was gone over by the accountants and questioned as to whether it was income, loan, transfer to another account or an expense. Any questions that the petitioner could not answer she relayed to her husband who would answer through her or get in touch with the accountant directly. Examining the Forms 1099 and the W-2's submitted by the petitioner, the accountants found that the bank deposits did not exceed what was reported as income for the years in question. Robert Hayes was under investigation by the Internal Revenue Service for years prior to 1963. Realizing this, the petitioner specifically omitted *157 some expense deductions for 1963 so that expenses would not exceed income. Several loans accounted for the excess of expenses over income. Being away much of the time, Robert Hayes would leave a signed blank return with the accountants so that a return could be filed on time. A mistake was made on the 1963 return form that Robert Hayes had signed in blank and another unsigned form had to be substituted. Although an extension had been given, Robert Hayes was out of town on the last day for filing the 1963 return. So not to be late, the petitioner signed the return alone. The return was filled out as a joint return and joint return rates were used in computing the tax. Robert Hayes filed no other return for that year. For the taxable year 1963, the income reported by the petitioner totaled $24,692.51 which represented $13,503.64 from National Credit Service of San Mateo, California, $5,809.84 from National Credit Service of Florida, Inc., and $5,379.03 from Silitronic Chemical Corporation of North Miami. All such income was reported to the petitioner on Forms 1099 from these companies. None of the income reported on the 1963 return belonged to the petitioner nor did she have any *158 income in 1963. For the taxable year 1964, the gross receipts reported on Schedule C of the petitioner's joint return totaled $20,135.13, which represented $5,007.01 from National Credit Service of Florida, Inc., and $15,128.12 from National Credit Service of San Mateo, California. Subsequent to filing that return, the petitioner was advised by a Mr. Heater, the head of National Credit Service of San Mateo, that the $15,128.12 reported was in error and should have been only one-half of that amount. The petitioner was also advised by her husband that he had received $10,000 of income from a Mr. Blaise. As a result of these changes, an amended return was filed by the petitioner and her husband showing gross receipts on Schedule C to be $22,571.07. For the taxable year 1965, the gross receipts reported on Schedule C of the petitioner's joint return totaled $4,965.88, which represented $4,931.86 from National Credit Service, and $34,02 from Universal Credit Acceptance. These amounts were reported on Forms 1099. The respondent determined that Robert Hayes was engaged in various business transactions and that he received unreported business income as follows: Taxable Year 1963
National Credit Service of Florida
Funds received but not included on
Form 1099
$ 2,575.00
Expenses deducted by taxpayer but
reimbursed by the corporation
348.01
Checks from a James Alexander for
part of "Holland Investments"
7,300.00 [2]
Total
$10,223.01
National Credit Service of San Mateo
Funds received from a Mr. Bruch
$ 2,553.95
Silitronic Chemical Corporation of Texas
Funds received from a Rad Ware
$15,000.00
Less portion paid to another party
(7,400.00)
Funds received from a Mr. Shaw
1,500.00
Funds received from a Mr. Carlin
1,000.00
Cash withheld from deposits of
corporate checks
750.00
Commission checks to taxpayer from
corporate bank account
3,391.40
Expenses deducted by taxpayer but
reimbursed by this corporation
1,517.49
Total
$15,758.89
Taxable Year 1964
Silitronic Chemical Corporation of Texas
Expenses deducted by taxpayer but
reimbursed by this corporation
$ 310.08
Received on account of transfer of
funds to new account at Preston
State Bank
300.00
Funds received from a Mr. McDaniel
5,000.00
Total
$5,610.08
National Franchise Management Company
Funds received from a Mr. Pickering
$12,500.00
Portion of this paid to another party
(2,000.00)
Funds received from a Mr. Blaise
12,000.00
Total
$22,500.00
Coffee Bar Associates of America
Funds received from a Mr. Stewart
$ 1,000.00
Funds paid to taxpayer from corporate
account
1,750.00
Funds received from a Mr. D'Angelo
1,312.88
Funds received from a Mr. Vader
350.00
Total
$ 4,412.88
Taxable Year 1965
Executive Investments Incorporated
Funds received from a Mr. Ritchie
$ 5,000.00
Funds paid to or for the taxpayer
from the corporation bank account
7,400.00
Checks to cash received by this tax-
payer
325.00
Expense deducted by taxpayer but paid
by this corporation
682.61
Invested in this corporation by tax-
payer
(1,000.00)
Portion paid to another party from
above receipts
(2,500.00)
Total
$ 9,907.61
*159 The petitioner knew some of the people that her husband had business dealings with and she was aware that some of them engaged in business transactions with her husband. However, she did not know of the nature of said dealings or whether income arose therefrom. The petitioner had no knowledge of the unreported income determined to have been received by her husband. Such income was not deposited in the personal checking account to which petitioner had access. Some of the items were deposited in other banks in accounts that Robert Hayes had opened under various names. The respondent also determined that the petitioner had unreported nonbusiness income of $5,168.08 in 1963 and $7,162.09 in 1964. The $5,168.08 for 1963 consisted of $5,000 gambling gains by Robert Hayes and $168.08 unpaid credit card charges. The $7,162.09 for 1964 consisted of unpaid credit card charges made by Robert Hayes. In addition, the respondent determined that the petitioner had unreported interest income in the amount of $300 for 1964 and in the amount of $150 for 1965. Lastly, he disallowed certain contributions in the amounts of $327.75, $325, and $125 *160 for the taxable years 1963, 1964, and 1965, respectively, and made adjustments to medical and business expenses claimed. The respondent determined that the petitioner and her husband filed joint Federal income tax returns for the taxable years 1963 through 1965 and that the petitioner was therefore liable for the unreported business income of her husband. The petitioner contends that no joint return was filed for the taxable year 1963 and that in any event she is relieved from liability pursuant to section 6013(e). OPINION For the petitioner to be deemed an "innocent spouse" and be relieved from any additional tax liability for 1963 through 1965, she must meet the tests prescribed in section 6013(e). [3]Raymond H. Adams,60 T.C. 300 (1973); Jerome J. Sonnenborn,57 T.C. 373 (1971). *161 The petitioner contends that a joint return was not filed by her and her husband for the year 1963 because Robert Hayes did not sign that return. The respondent having determined that the return filed for that year was joint, the burden of proof is on the petitioner to show otherwise. Myrna S. Howell,10 T.C. 859 (1948), affd. 175 F. 2d 240 (C.A. 6, 1949). Whether or not a joint return has been filed depends on the intent of the spouses. While the failure of one spouse to sign the return is a factor to consider, it is not of itself determinative. See Vincent S. Hennen,35 T.C. 747 (1961). From the facts, it is clear that the petitioner and her husband intended to file a joint return for the taxable year 1963. That return was filled out in both their names and was designated as a joint return. Joint rates were used in computing the tax, and Robert Hayes did not subsequently file a separate return. Although the petitioner was the only one who signed it, the fact that all the income reported on that return was derived from the activities of Robert Hayes, supports the conclusion that the return was joint. See Irving S. Federbush,34 T.C. 740 (1960), *162 affd. 325 F. 2d 1 (C.A. 2, 1963); Zabelle Emerzian,20 T.C. 825 (1953). The only reason that Robert Hayes did not sign the return was because of his being away at the time the return was required to be filed. We therefore conclude that the petitioner and her husband intended that the return they filed for 1963 be joint. The respondent has agreed that in excess of 25 percent of the amount of gross income stated in the returns for each year was omitted from the respective returns. No adjustments that the Court might make, considering the petitioner's burden of proof, would change this. The primary contention of the respondent is that the petitioner knew or should have known of the unreported business income of her husband. The Court is convinced by the petitioner's testimony that she did not actually know of the omission of such income. Her actual knowledge was limited to what was sent or given her for deposit, what was reported on the Forms 1099 that her husband gave her and what was told her by her husband. As to whether or not petitioner had reason to know of the omissions, the question is a factual one depending upon the circumstances of the *163 particular case. It turns upon whether a reasonably prudent taxpayer would have had no reason to know of the omissions. Patricia E. Mysse,57 T.C. 680 (1972); Sanders v. United States, F. 2d ( C.A. 5, March 7, 1975, 35 AFTR 2d 75-935, 75-1 USTC Par. 9297), affirming 369 F. Supp. 160 (N.D. Ala. 1973). The petitioner had control over the "family" checking account and kept other financial records. She accepted what her husband told her as to whether amounts that he gave her for deposit to their personal account were commissions income, other income, or loans. She had no reason to believe that he had other sources of income. Her husband was frequently away from home and petitioner was not aware of his activities, except to the extent he wanted her to know. Compare Sanders v. United States,supra, with Raymond H. Adams,supra.Complete knowledge of the family's finances is not required of the petitioner. There is no evidence of unusual or lavish expenditures which would have put the petitioner on notice that there was additional unreported business income. Cf. Patricia E. Mysse,supra.
Nothing *164 in the accounting mechanism involved in handling and balancing the personal checking account and in sorting income from expenses would bring to the petitioner's attention the unreported business income of Robert Hayes. It is likely that no amount of bookkeeping would have apprised her of her husband's other income. The petitioner did know some of the people with whom her husband had dealings and she knew of some of the transactions involved. However, the details of these transactions, which appear to be complex in some cases, were not revealed to her. She had no reason to know that such transactions were productive of taxable income. The fact that the petitioner questioned expenses as they related to the income for 1963 does not of itself require us to find that she had reason to know of the omission. On the contrary, it was only after being told by the accountants that loans during the year were not reportable as income that she realized that there was an excess of expenses over income. Realizing that her husband was being investigated by the Internal Revenue Service, she wanted to make certain that this situation as it appeared, would not cause further trouble. The Court is *165 also convinced that the petitioner did not benefit significantly or otherwise from the omissions of income by her former husband. The mere fact that on her divorce she received their home upon which mortgage payments had been made during these years, will not cause this requirement to fail, especially in view of the fact that the mortgage payments were made out of the funds in the personal checking account. At most these payments were in the nature of "normal support." Section 1.6013-5(b), Income Tax Regs. In our opinion, the type of case presented by this record exemplifies the situation that Congress had in mind in enacting section 6013(e). It would clearly be inequitable to hold the petitioner liable for the deficiencies attributable to the unreported business income of her husband. The respondent also determined that the petitioner was liable for unreported nonbusiness income for the years in question consisting of gambling winnings of Robert Hayes, unpaid credit card charges, and interest income. In addition, he disallowed certain contributions claimed for these years and he made various adjustments to expenses deducted. The petitioner failed her *166 burden with respect to these items. In this respect, the respondent's determination must be sustained. In accordance with the above, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Form 1099 is an informational return filed by the payors with respect to certain payments made.↩
2. The respondent overstated this amount by $300.↩
3. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. * * *
(e) Spouse Relieved of Liability in Certain Cases.-- (1) In General.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.↩